IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES H. BENDYNA JR.,　　　　　(
　　　　Plaintiff　　　　　　　　(
　　　　　　　　　　　　　　　(
v.　　　　　　　　　　　　　　(　　　COMPLAINT
　　　　　　　　　　　　　　　(　　　Civil Action No.: 1:17 cv 860
FEDERAL BUREAU OF PRISONS,　　(
WARDEN MR. L. J. ODDO,　　　　(　　　FILED
ASSOCIATE WARDEN MR. D. WHITE,　(　　SCRANTON
SUPERVISORY CHAPLAIN MR. B.　　(
CIESLUKOWSKI, individually and in　(　　MAY 1 5 2017
their official capacities, et al.,　　(
　　　　Defendant[s]　　　　　　(　　　PER /s/ DEPUTY CLERK

## I. JURISDICTION & VENUE

1.　　　This is a civil action authorized by 42 U.S.C.S. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.  The court has jurisdiction under 28 U.S.C.S. §§ 1331 & 1343(a)(3). Plaintiff seeks declatory relief pursuant to 28 U.S.C.S. §§ 2201 & 2202.  Plaintiff's claims for injunctive relief are authorized by 28 U.S.C.S. §§ 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2.　　　The United States District Court for the Middle District of Pennsylvania is an appropriate venue under 28 U.S.C.S. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF

3.　　　Plaintiff, James Harry Bendyna Jr., is and was at all times mentioned herein a prisoner of the Federal Bureau of Prisons in the custody of United States Penitentiary Allenwood in White Deer, Pennsylvania where he is currently confined.

## III. DEFENDANTS

4.　　　Defendant, Mr. Thomas A. Kane is the Acting Director of the Federal Bureau of Prisons.  He is legally responsible for the overall operation of the Federal Bureau of Prisons hereinafter referred to as the FBOP and each institution under its jurisdiction, including United States Penitentiary Allenwood in White Deer, Pennsylvania.

5.      Defendant, Mr. L. J. Oddo is the Warden of USP-Allenwood.  He is legally responsible for the operation of USP-Allenwood and for the welfare of all the inmates in that prison.

6.      Defendant, Associate Warden Mr. D. White (herein after referred to as AW White) is a Executive Staff/Correctional Officer of USP-Allenwood in White Deer, Pennsylvania who, at all times mentioned in this complaint, held the rank of Associate Warden and is assigned oversight of Religious Services as well as other departments within the facility (e.g. Health Services, Psychology, Correctional Services, etc.).

7.      Defendant, Mr. B. Cieslukowski (herein-after referrred to as Chaplain Cieslukowski) is a Supervisory Chaplain/Correctional Officer of USP-Allenwood who, at all times mentioned in this complaint, held the rank of Supervisory Chaplain and is assigned oversight and control of Religious Services.  This oversight includes, but is not limited to all inmate belief group activities and worship schedules, provisions for those groups in accordance to FBOP policy, and is the bottom line to all final decisions made on behalf of those groups.

8.      Each defendant is sued individually and in his/her official and unofficial capacity.  At all times mentioned in this complaint each defendant acted under the color of state and federal law.

## IV. FACTS

9.      Since I arrived to USP-Allenwood circa July/August 2016, and my high Holy Days of Rosh Hashannah, Yom Kippur and Sukkot were closely approaching I went to Religious Services to assure I would be placed on the list to participate with the other Jewish inmates for those days. At that time I had asked the Chaplain whom at the time was the Supervisory Chaplain for FCC; Allenwood (FCC stands for Federal Correctional Complex, this includes a Low, Medium and Penitentiary within the complex herein known as FCC-Allenwood) what they provide the Jewish community for each upcoming Holy day since Yom Kippur, Rosh Hashannah, and Sukkot were coming up that September through till October (e.g. challah bread, honey, fruit [two kinds], etrog/lulav/tent for Sukkot, etc.)

10.     Chaplain Cieslukowski had responded to my request with some very extreme abnormalities of how and what they did and provide for the Jewish community for the upcoming Holy Days of Yom Kippur, Rosh Hashannah, and Sukkot.  These abnormalities prompted me to speak with the Administration staff (Associate Warden Mr. Charles Smith herinafter referred to as AW Smith) specifically AW Smith acting as the AW over Religious Services and Operations.  An agreement was made between Chaplain Cieslukowski, AW Smith and myself for what would be provided and what would not for Yom Kippur, Rosh Hashannah and Sukkot.  This agreement was broken by the Chaplain and I filed a grievance on October 23, 2016, which was resolved on November 22, 2016.  This agreement made between the Chaplain and myself was that he would no longer interfere, restrict or minimize the needs for the Jewish community as per FBOP policy, our Laws of Kashruth, and the United States Constitution allows us. (see attached Request For Administrative Remedy 880879-F2 and appropriate attachments, Exhibit A-1 thru 7).

11.     Circa January I received my bi-monthly issue of National Liberator from Aleph for the months of March/April.  This issue provides exactly what is provided for both inmates and staff as for products provided for Passover.  Either the Institution can purchase these items (where they are provided a set price), or the inmate can purchase said same items in what is called a Special Purchase Order (hereinafter referred as SPO and the inmates have a set price that is cheaper than the Institution's price).  The Jewish community sometime in January received their SPO order forms from Religious Services.  The first draft of these forms was not what is usually allowed and normally ordered at other institutions to my knowledge and belief.  Also,the prices placed on the forms were drastically different from what Aleph had printed, and inmates were asked to fill out seperate SPO order forms so that an additional 30% can be marked-up on certain items Religious Services deemed not "meals", plus items offered by Aleph and to my knowledge and belief are and had been offereed at other facilities (e.g. Macaroons, chocolate bars, etc.).  When I asked why was there such a drastic up-charge on the items and why are we not allowed to purchase all the items provided by Aleph, I was lied to and provided responses that did not make any rationale sense, and I also brung up the agreement we had made that he would no longer limit our needs.  This too was not answered in any realistic manner and again I was forced to seek relief from the FBOP Administrative Remedy process where I filed an initial Informal Resolution (BP-8) on January 26, 2017.

12.     My answer to my BP-8 was not answered to my satisfaction since it did not address the issues I raised within it appropriately and with any clarity.  Chaplain Cieslukowski's response stated his actions were supported in policy, yet he provided

no such information or any copies of said policy he stated his actions were in accordance with (see attached BP-8 and all attachments thereto as Exhibit-B-1 thru 9).

13.     On February 1, 2017, I filed an appeal to my BP-8 response to the Institution's Warden, Mr. L. J. Oddo (hereinafter referred as the Warden).  I detailed in clarity and stated policy along with facts of why my grievance should be heard and awarded.  These facts I stated  was what FBOP policy clearly outline  as to what is and is not to be marked-up for 30% up-charges,  How the Chaplain even outside of this illicit up-charge had already up-charged the items made available by his department for SPO Passover purchase by 30% already and the base price used was the prices set for purchases made by the Institution for their disbursement, not the price list set for individual purchace by inmates.  This act in itself is to my knowledge and belief considered fraud by PA State Statutes and Codes as quantum merit and unjust enrichment.  I also outlined in my BP-9 how the Chaplain's response made no rationale showing of why he made certain items he called "snacks" tagged for the 30% mark-up, in fact, some of the items he had tagged for the 30% mark-up are items used on the Seder plate (Seder is the first two nights of Passover where certain Mitzvahs are performed with certain food and ritual items while we read from what is called the Haggadah [a remberance of our exodus from Egypt and the acts performed by Moses that  freed the Jews from bondage from the Pharoah].  And we eat Kosher for Passover Matzoh each day as a reminder of that time and the entire Seder is centralized around a handmade matzoh called Schmurah Matzoh, and even though this item should be considered a high religious item it too was marked-up for 30% as well. Then I outlined FBOP policy tself and incorporated the Webster's  International New   World Dictionary where I showed even the word "snack" is considered to be a light "meal" and as per FBOP policy that Passover meals during Passover are not to be up-charged.  Even when presented with these facts the Warden's response never answered these facts; but made statements that again does not appear anywhere in FBOP policy or any displayed Institution Supplement, but basically reiterates the Chaplain's response along with a spin-dance of staff's abuse of authority by piecemealing parts of FBOP policy irrelevant to the issue to justify their reasons for limiting and discriminating against the Jewish community (see attached BP-9 and response dated February 10, 2107, Exhibit C-1 thru 3).

14.     On February 16, 2017, I filed an Appeal to the BP-9 to the Northeast Regional Director (responding Regional Director Mr.M. D. Carvajal)hereinafter referred to as Director Carvajal)  stating my dissatisfaction with the Warden's response. Again I had outlined my previous arguements as well as outlining the Warden's reply and how it held no rationale or reasonable answer to my complaint.  I also showeed the flaws within the Warden's response and how it was not substantiated by any relevant FBOP policy.  Even

the Director Carvajal's response was not substantiated by any factual FBOP policy, even though he quotes specific FBOP policy that I already argued does not support either Chaplain Cieslukowski, Warden Oddo and now Director Carvajal's responses. In fact, the Director's response was condescending in its tone (read the first sentence of paragraph 2 of the response) when it states, "...the Warden addressed your numerous concerns...". I've had only one concern =, that being religiously discriminated against and my supporting evidence to such (see attached BP-10 and response Exhibit D-1 thru 3).

15.      On April 19, 2017, I filed my final Appeal to Central Office in Washington, D.C. to Director Carvajal's response. As I stated in Line-14 of this Complaint the issues I had with Director's Carvajal's response I had raised a similar arguement in the Appeal I sent. This is the final stage of the Administrative Remedy Process and when I receive the response I will have completed the requirements outlined in the Prisoner's Litigation Reform Act 42 U.S.C.S. § 1997e(a). To date I have not received any response from the FBOP Central Offices. (see attached BP-11 and attachments Exhibit E-1 thru 2).

16.      During this time period  I filed a Order to Show Cause for an Preliminary Injunction and a Temporary Restraining Order along with an Affidavit/Declaration of James H. Bendyna Jr. with a Memorandum of Law in support for this Complaint (see attached Motions and supporting documents Exhibit F-1 thru 9).

17. As I was attempting to file my grievances and Civil Action I had requested to use the Law Library's typewriter and to be supplied with the appropriate materials to operate it. I was refused for reasons that are not outlined in any FBOP policy nor in any system or placed on display for inmates knowledge of said prongs for being able to use a fully operational typewriter. I was told I must be indigent to receive the necessary items needed to operate the law Library typewriters (e.g. typewiter print wheel, type-ribbon and correctional tape, etc.). Even though FBOP policy clearly states nothing of an inmate having to be indigent for him/her to receive such materials and I had filed a grievance for this. I believe to the best of my knowledge and belief that I am denied these materials to thwart my attempts of filing legible grievances and court filings since this Civil Action is not my only legal filing I'm currently undertaking and because I've had damaged bones in my hands and have beginning stages of arthritis in both hands it is extremely painful and difficult for me to write lengthy periods of time and I find this cruel and unusual punishment. I state this because staff in their responses state the courts will take handwritten responses or filings. This statement is moot since when did any government agent been given any authority to dictate how inmates can and cannot file his/her legal filings (see attached  grievances filed Exhibit G-1

thru  ).

18.      I also entered into USP-Allenwood's Challenge Program (a therapeutic community)
circa December/January 2017.  I was prematurely removed from this program for no written
infraction, nor was I afforded any formal warnings (which are 3 as per the Challenge
Handbook of Rules and Regulations ) I was removed based on allegations that were not true
made by other inmates (as per Dr. Morris' statements) and were held as credible.  Many
Challenge members from graduates to current participants had approached Dr.Morris to see
why I was being removed for an alleged act that warranted no immediate removal (tattoos)
and these inmates were told many different variations or reasons why I was expelled.  It
is my firm belief that because I'm filing this Complaint and am considered a "litigator
or Jailhouse lawyer" that this was the underline rationale for my expulsion from the
Program.

19.      On April 27, 2017, I requested via electronic email Request toStaff AW White
to provide me with the full legal names of the Warden, Supervisory Chaplain, Aw Smith,
and himself.  He replied on the 28th by stating he was only providing his first name's
initial and full last name and stated if I wanted more detailed information to use the
Freedom of Information Act and file my request ot them.  Ironically,  I filed a request
for information with FOIA's offices for information such as this that I requested either
verbally to my Unit Team staff (Counselor Rearick and Case Manager Ms. Stackhouse) for
the legal names of staff, other inmates who received more than 6-months half-way house
in USPs, and from Chaplain Cieslukowski specific budget information.  They responded to
me and stated in their response that I should request the information I need to the
appropriate office I'm asking information from(i.e. the same FBOP staff members who had
denied me the same information I'm seeking and ordered me to request it via FOIA).  I
also believe this is in continuation of staff's attempts to thwart me access to public
information I need to support my arguements in my legal filings as well as their acts
of reprisal for using the Administrative Remedy for redress for wrongs set against my
person (see attached Electronic requests and FOIA office's response dated April 28,
2017, Exhibit H-1 thru  ).

## V. EXHAUSTION OF LEGAL REMEDIES

20.      Plaintiff James Harry Bendyna Jr. used the prisoner grievance procedures
available at USP-Allenwood to try and solve the problem. Since thew date of his initial
filing on October 23, 2016, plaintiff James Harry Bendyna Jr. presented the facts
relating to this complaint.  On November 22, 2016, plaintiff James Harry Bendyna Jr.

was offered an Informal Resolution where an agreement was made with the Supervisory Chaplain Mr. B. Cieslukowski and hisself.  This agreement was broken and plaintiff filed another grievance using the prison's grievance procedures again on  January 26, 2017, On the new grievance I again presented facts relating to this complaint.  On January 31, 2017, plaintiff James Harry Bendyna Jr. was sent a response saying that the grievance was denied.  On  February 1, 2017, he appealed the denial of the grievance.  On February 10, 2017, plaintiff James H. Bendyna Jr. was sent a response to his appeal saying that he had been denied again.  On February 16, 2017, he appealed the denial of his first appeal to the Northeast Region for the Federal Bureau of Prisons.  On March 29, 2017, plaintiff James Harry Bendyna Jr. was sent a response to his second appeal saying that it had been denied.  On April 19, 2017, he sent his final appeal to his Region's denial to Central Offices in Washington, D.C. forthe Federal Bureau of Prisons.

## VI. LEGAL CLAIMS

21.      Plaintiff realllege and incorporate by reference paragraphs 1-20.

22.      The Religious discrimination, acts of fraud, staff reprisal and harrassment violated plaintiff James Harry Bendyna Jr.'s rights and constituted cruel and unusual punishment, right to religious practice and beliefs, and my due process under the First, Eighth and Fourteenth Amendments to the United States Constitution.

23.      The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein.  Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which plaintiff seeks.

## VII. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiff:

24.      A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.

25.      A preliminary and permanent injunction ordering defendants the Federal Bureau of Prisons, Warden L. J. Oddo, Associate Warden D. White, Supervisory Chaplain B. Cieslukowski, et al. to cease and desist any further acts of reprisal, retaliation or harrassment against him for using the Administrative Remedy Process; stop limiting, discriminating against and/or denying him his access to religious items (Passover SPO order items supplied by Aleph, or materials necessary  to comply with the Jewish faith [e.g. books, fragrances/oils/ Sukkot tents, Havdallah set, Torah, Tallit & Tefillin, etc.] or the such) as allowable by FBOP policy and the United States Constitution

or the such) in accordance to FBOP policy, the Jewish Rabbicinal Laws and the United States Constitution.

26.      Compensatory damages in the amount of $ 500.00 against each defendant, jointly and severally.

27.      Punitive damages in the amount of $1,000.00 against each defendant.

28.      A jury trial on all issues triable by jury.

29.      Plaintiff's cost in this suit.

30.      Any additional relief this court deems just, proper, and equitable.


Dated:  May 1, 2017                          Respectfully submitted,

                                             James Harry Bendyna Jr.
                                             Register #: 40866-050
                                             FCC; USP-Allenwood
                                             P.O. Box 3000/Unit-3B
                                             White Deer, PA 17887


## VERIFICATION

        I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matteres alleged on information and belief, and, as to those, I believe them to be true.  I certify under penalty of perjury that the foregoing is true and correct.


Executed at White Deer, Pennsylvania on May 1, 2017.


James Harry Bendyna Jr.

EXHIBITS A-1 THRU 7

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: BENDYNA, JAMES H.        40860-050      B-222 SHU    USP Allenwood
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT        INSTITUTION

**Part A– INMATE REQUEST** Prior to coming to SHU on Fri, Oct. 14, 2016, I was attemptin Informal resolution with Chaplain Cheslewkowski with AW(Brown's) as a mediator about specific food items and religious items needed for the Jewish High Holy Days as well as our Fast meals. The Chaplain has been reluctant and at times extremely adverse to provide me with these specific items (Challah bread, Grape Juice, sukkah tent [appearently it was a timing & security issue], etc) needed and necessary for our High Holy Days ceremonies and rituals, that are provided at other FBOP USPs, FCI and the like pre-approved by the Rabbicinal committee in D.C. and in the FBOP Religious manuals. During Pill Line (10:30 AM) in the presence of AW Brown, Chaplain Cheslewkowski and I came to a resolution and agreement that I along with the 6 other Jewish Community members would receive each Challah Bread & Grape Juice for the first 2 days Mon & Tues 10/17 & 10/18, and the last 2 days, Mon & Tues 10/24 & 10/25 for their lunch & Dinner meals so we will be in Compliance with our laws & rituals according to Kashruth for Sukkot. When I came to SHU on

October 23, 2016 (BP-9 Continued)
    DATE        SIGNATURE OF REQUESTER

**Part B– RESPONSE**

    DATE        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**        CASE NUMBER: 880879-F1

    CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

    DATE        RECIPIENT'S SIGNATURE (STAFF MEMBER)

    (A-1)

BP–229(13)
APRIL 1982

BENDYNA, JAMES H. 140866-052          Signature ☓
USP-Allenwood                                    JAMES H Bendyna
BP-9 (Continuation page - rewrite)
November 10, 2016

October 14, 2016, and immediately drafted a Cop-Out to Chaplain Cheslewkowski Asking him to make sure I'm provided a Sidclor (Jewish prayers), Matzolt + Grape juice for each weeks Sabbath's, as well as the Challah bread for all ④ days of Sukkot we had already agreed to. On October 17, 2016, the first day of the 2 days I was to receive challah bread + Grape juice for Sukkot, Chaplain (Ash)? came to my cell with only Matzah + Grape juice, I asked did the other Jewish inmate receive their Challah he said they did and I wasn't receiving mine. Chaplain Ash had stated he received no instructions from Chaplain Cheslewkowski and then left. I spoke with Warden Odden that upcoming SHU mainline and explained All the previous aforementioned events and he stated I should have also been in receipt of what the other members received. On October 23, 2016, I was seen by Chaplain Cheslewkowski in the present of SHU range officer MR Hendrix. I had asked why he was not bringing me my Challah as promised and not only did he renegged on his promise in front of AW Brown of 1-loaf of Challah per inmate for the first 2 days of Sukkot but another single loaf for the last two days (one loaf would've been ample amount for ④ meals for those first 2 days as well as the last) by not providing me my Challah bread, but only provided ① loaf for 5 inmates to cover 4 meals that they had to divy-up on the 17th as well as on the 24th. I expressed the warden's contentions that I should've been in receipt of Challah and when Cheslewkowski said he disagreed I then asked so you're refusing me my issue to religious items and he stated "yes!". This being witnessed by my cell mate Treavor Steadman and Officer Hendrix. This has not been the first incident where the Chaplain had either refused or made the excuse he was unaware of our conversations, emails, cop-outs, Etc. dealing with Jewish ceremonies and religious needs. He has blatantly interfered, denied or minimized my religious needs to be in compliance with our Jewish laws + rites and is in direct violation of The U.S. Constitution as well as the R.L.U.I.P.A. + R.F.R.A. and his issuing of Challah to the other Jewish members and not myself is a FBOP policy violation of Discrimination as well. I request Chaplain without sound penelogical rationale to No longer interfere with my FBOP approved right to practice my Religion and be provided all necessary items outlined by Central Office, The Rabbinical Committee and our laws of Kashruth.

(A-2)

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 28, 2016

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      ALLENWOOD USP

TO  : JAMES H BENDYNA JR, 40866-050
      ALLENWOOD USP    UNT: III    QTR: Z03-222LAD
      P.O. BOX 3500
      WHITE DEER, PA 17887


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 880879-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : OCTOBER 28, 2016
SUBJECT 1      : RLGS FOOD:CERTIFIED/NON-FLESH - DELIVERY/PREPARATION OF
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

REJECT REASON 2: SEE REMARKS.

REMARKS        : PROVIDE EVIDENCE OF ATTEMPTED INFORMAL RESOLUTION
                 BP-229 SAYS BP-CONTINUED - NO CONTINUATION SHEET
                 SUBMITTED

(A-3)

# Cop-Out

To: Unit Mgr./3-B MR. Passenetti

From: J. BENDYNA / 40866-050

Date: Nov. 4, 2016    CELL: B-224

Mr. Passenetti on October 23, 2016, you had come through SHU and I had expressed that I have a BP-9 to be processed and that just 15 minutes prior to your arrival B-Range staff had it in their possession for copies. The B-Range officer expressed the envelope it was in was gone in the officers station and assumed you had taken it. There was a continuation page as well as the BP-9 Blue Form in that envelope, I asked you to make the required 4 page copies of the continuation page & process. I was returned said BP-9 on Nov. 2nd, 2016 being rejected for non-informal response and the continuation

page attached Hereto was missing. Would you check in your office or with said SHU officer to find out whom or How it was misplaced and if found return to me so I can proceed with my BP-9. If you cannot find it please put in writing so I can attach with my Redrafted continuation page and process my BP-9 again. Thank you.

(A-5)



TO: ADMIN. Remedy Coord. (ARC)
FROM: JAMES H. BENDYNA / 40866-050
Date: November 10, 2016.
RE: BP-9 # 880879-F1

Dear Sir/maam ARC:
   Please allow me to correct you in that this complaint is not about food & religious (certified) or the preperation thereof, but the supply of religious items albeit books, candles, oils or foods for our High Holy Days. Second, As per Policy staff are to "encourage informal resolutn" and it is not mandated I must file informally. And writing electronic emails, paper Cop-Outs (the original BP8), verbal conferences with other executive staff doesn't cover informal resolution; it either says you A) find those methods not informal enough; or B) you in so many words do not believe I had attempted any attempts to resolve this informally, and I have to no avail, basically stating I'm a liar. Plus, filing the BP-9 was at Warden Oddens direction, so I did as stated to do. Finally, when I filed this BP-9 I had handed the entire BP-9 (Blue forms) and continuation page along with a Cop-Out askin for copies of each for myself as well as sufficient copies of the Continuation page to be in compliance with Policy. I placed the BP-9 in an envelope and handed the envelope and Cop-Out to B-Range SHU officer (?) on that evening of 10/23/16, shortly thereafter Mr. Passaniti came through B-Range and I said the officer has a BP-9 for you from me, and I expressed to him the need for copies, etc.. Either SHU staff, Mr. Passaniti or your office had misplaced the original continuation page, but it was most certainly attached to it when it left my cell.
   With this all being said, accept this re-submission and reply to it as complete and true.

                        Signature : 

(A-6)

## USP Allenwood

## <u>Informal Resolution of Administrative Remedy</u>

I hereby request Administrative Remedy Number 880879-F2, be dropped, due to

the issue being informally resolved to my satisfaction. I have discussed this matter

with the investigating staff member. When religious accommodations are required I will make

my requests known to the Chaplain. The Religious Services Department will ensure that

appropriate religious accommodations are made according to the Jewish faith.

Signature:

BENDYNA, James, Reg. No. 40866-050

| Signature Staff Member | Date |
|---|---|
| | 11/22/16 |

(A-7)

**EXHIBITS B-1 THRU 9**

*6050*   *Religias Sr*

ALP-1330.13J
September 1, 2005
Attachment 1

# United States Penitentiary
## Allenwood, Pennsylvania

### ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
### INFORMAL RESOLUTION FORM

**NOTE TO INMATE:**  You are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-9 [BP-229(13)], you must ordinarily attempt t informally resolve your complaint through your Correctional Counselor.  Briefly state __ONE__ complaint below and list what efforts you have made to resolve your complaint informally and state the names of staff contacted.

Issued By: ___*RV*___  (Initials of Correctional Counselor)
Date Issued To The Inmate: ___*1-23-17*___

__INMATE'S COMMENTS:__

1.   Complaint: On 1/20/17, during Jewish Shabbot, Chaplain Moore passed out our annual SPO Passover order forms (see Exhibit A).  These items are being purchased from Aleph, the prices reflected on USP-Allenwood's forms are clearly marked up nearly 200% (see Exhibit B), and we (Jewish Community) were also asked to submit a seperate SPO form for section #2 on the order forms provided so that USP-Allenwood could additionally add another 30% to items that

2.   Efforts you have made to informally resolve: *Spoke w/ Religious Services several times and this is my informal attempt.*

3.   Names of staff you contacted: *Moore, Cieslokowski*

Date Returned to Correctional Counselor: _____

*[signature]*
Inmate's Signature        *4086(o(o-050*        *1/26/17*
                          Reg. Number            Date

__CORRECTIONAL COUNSELOR'S COMMENTS:__

1.   Efforts made to informally resolve and staff contacted: _____

_____

_____

Date BP-9 Issued: _____

                                    Correctional Counselor

                                    Unit Manager (Date)

                                    *(B-1)*

__Distribution:__  If complaint is __NOT__ informally resolved - Forward original attached to BP-9 Form to the Executive Assistant.

(BP-8 continued)

under Policy are not to be marked-up at all. As per Webster's definition for the word "meal" it states, "any of the times for eating, as lunch or dinner; and the food served at such a time (i.e. main entree/entree, course/s, side dish/accompaniments, dessert or snack). It is quite clear that in P.S. 4500.11-Trust Fund/Deposit Fund Manual-: under 3.4-Pricing § (d): The following items have <u>NO MARK-UP ADDED TO THE COST AND ARE NOT ROUNDED TO THE NEXT $0.05:</u> <u>-PASSOVER "MEALS" DURING PASSOVER!</u> Under the Religious Freedom Restoration Act (RFRA) 2000bb (1)&(3) it states, " (1) the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution; and (3) governments should not substantially burden religious exercise without compelling justification." Under Constitutional Law -Conditions on benefit or privilege- § 925,936 it states, "Liberties of religion and expression may be infringed by denial or placing of conditions upon a benefit or privilege:" and under Constitutional Law -Permissible limitations- § 936 it states, "Only the gravest abuses, endangering paramount interests, give occasion for permissable limitation of religious freedom; no showing merely of a rational relationship to some colorable state interest will suffice." With the above-forementioned stated, Religious Services has NOT to this point provided ANY showing of a grave abuse nor any rational penalogical interest that justifies limiting our SPO Passover purchase items that Aleph is providing for 2017 Passover (see Exhibits C & D) that is where our Passover items are to be purchased by USP-Allenwood as stated by Chaplain Cieslukowski. Our Jewish group as well as myself have pointed out these limitations, price increases to both Chaplains Moore and Cieslukowski, and Chaplain Cieslukowski had revised the SPO order forms (see Exhibit E) where once again items offered by Aleph were omitted as well the prices are again marked-up with again no showing of any grave abuse or penalogical interest that justifies these erroneous limitations and unjust price adjustments.

These acts are highly prejudicial, discriminatory and in violation of FBOP Policy as well our Constitutional rights and privileges under the First Amendment and supported by the United States Supreme Court in <u>Sherbert v. Verner</u>, 10 LED 2D 965,374 US 398; <u>Wisconsin v. Yoder</u>, 32 LED 2D 15,406 US 205; and <u>Employment Division v. Smith</u>, 108 LED 2D 876,494 US 872. Since all items provided by Aleph for SPO purchase will also be provided with the meals for the (9) days of Passsover by Food Service in the National Passover Menu it is clear there is NO issue of grave or penalogical interests except a personal prejudice along with staff's attempt at quantum merit and unjust enrichment.

I request that all items proivided by Aleph for Passover purchase be provided in its entirety with the appropriate sales prices with no fraudulant mark-ups. Since again Chaplain Cieslukowski in a previous Administrative Remedy (880879) had made an agreement that his department would no longer interfere with our religious needs is now in full breach of contract and I will be continuing with that appeal as well as

January 26, 2017                    (B-2)

# 2017 INMATE PASSOVER ORDER FORM

## Deadline for Submission to Chapel - Wednesday, February 22nd

NAME: _____

REGISTER #: _____

|          | AVAILABLE ITEMS | UNIT PRICE |
|----------|-----------------|------------|

### LIMIT OF 14 COMBINED MEALS (Separate SPO Form)

| ____ | SHELF STABLE CABBAGE WITH BEEF | $5.50 |
| ____ | SHELF STABLE CHICKEN AND MATZAH SOUP | $6.00 |
| ____ | SHELF STABLE BEEF GOULASH AND VEGETABLES | $6.00 |
| ____ | SHELF STABLE GEFILTE FISH | $5.50 |

### LIMIT OF 7 EACH

| ____ | SOUP BOUILLON CUBES | $2.30 |
| ____ | HORSERADISH | $6.20 |
| ____ | MILK CHOCOLATE | $3.90 |
| ____ | BITTERSWEET CHOCOLATE | $3.90 |
| ____ | MATZAH | $4.55 |
| ____ | MASHED POTATOES | $5.20 |

B

TOTAL ORDER PRICE: _____

-PLACE A QUANTITY ON THE LINE NEXT TO THE ITEM THAT IS BEING REQUESTED.

-COMMISSARY STAFF WILL PLACE A NOTICE WHEN ITEMS ARE AVAILABLE FOR PURCHASE.

INMATE SIGNATURE : _____

## A SIGNED SPO FORM MUST ACCOMPANY THIS ORDER REQUEST

EXIBIT A & B                    (B-3)



# Inmate S.P.O. & Commissary Passover Order Form

## ALL ORDERS MUST BE PLACED ONLINE AT WWW.JEWISHSUPPLY.COM

It is the responsibility of the individual placing the order to confirm that the inmate has authorization to receive Passover food packages from Jewishsupply.com. JewishSupply.com will not provide refunds for PACKAGES RETURNED due to lack of prior authorization.

## ORDER DEADLINE: MARCH 1, 2017

If you do not have internet, please have someone who has internet place this order for you. If that is impossible, you will need to call Jewish Supply at 305-866-5875 or email shipping@jewishsupply.com to receive permission to place the order another way. Orders that are faxed in or placed via email without prior approval will not be processed.

## Prices for Inmate Special Purchase Orders & Commissaries Only!

MR./MS.: _____     INSTITUTION: _____

TEL: ( ) _____ - _____ ext. _____  FAX: ( ) _____ - _____ Email _____

| ITEM | PRICE | QUANTITY | TOTAL |
|---|---|---|---|
| **MATZAH**<br>1 lb. box<br>30 per case | $2.25 | | |
| **SHMURAH MATZAH** (special handmade)<br>6 Matzahs | $10.00 | | |
| **GRAPE JUICE**<br>(4 x 6.75 oz.)<br>(Paper juice boxes)<br>10 per case | $3.50 | | |
| **HORSERADISH**<br>**WHITE SAUCE SPREAD***<br>(9.5 oz. Squeeze bottle)<br>9 per case | $3.50 | | |
| **SOUP BOUILLON CUBES**<br>(package of 3)<br>12 per case | $125 | | |
| **MACAROONS**<br>(10 oz.)<br>12 per case | $3.00 | | |
| **BITTERSWEET CHOCOLATE**<br>BAR 3.5 oz. (100/case) | $2.00 ea. | | |
| **MILK CHOCOLATE BAR**<br>3.5 oz. bar (100/case) | $2.00 ea. | | |
| **ALBACORE TUNA POUCH**<br>3 oz. pouch | $2.75 ea. | | |

| ITEM | PRICE | QUANTITY | TOTAL |
|---|---|---|---|
| **SHELF STABLE CHICKEN**<br>**& MATZAH BALL SOUP**<br>(non-gebrokts)<br>(12 oz. in Rexon Plastic)<br>12/case | $4.25 | | |
| **SHELF STABLE**<br>**CHICKEN W/ POTATOES**<br>(12 oz. in Rexon Plastic)<br>12/case | $4.50 | | |
| **SHELF STABLE BEEF**<br>**GOULASH AND VEG.**<br>(12 oz. in Rexon Plastic)<br>12/case | $4.75 | | |
| **SHELF STABLE**<br>**GEFILTE FISH**<br>(12 oz. in Rexon Plastic)<br>12/case | $4.25 | | |
| **SHELF STABLE BEEF**<br>**STUFFED CABBAGE**<br>(12 oz. in Rexon Plastic)<br>12/case | $4.25 | | |
| *Heat & Serve* MASHED POTATOES (Just add hot water!) - 12/case<br>(4.6 oz. Pouch) | $3.00 | | |
| 6 SHELF STABLE HARD BOILED EGGS (In Saltwater) - 12/case)<br>(12 oz. in Rexon Plastic) | $4.00 | | |

TOTAL $ _____

Prices *INCLUDE* shipping charges *UNLESS* order is under $10. All orders under $10 must add an additional $5 shipping charge.

*• Items should arrive no later than 4-6 days before Passover under normal circumstances.*

Exhibit C (B-4) 23

Case 1:17-cv-00898-AT Document 1-4 Filed 08/15/17 Page 22 of 72



aleph NATIONAL **LIBERATOR**

# Chaplains Passover Order Form

## ORDER DEADLINE: MARCH 1, 2017

## All PAID ORDERS MUST BE PLACED ONLINE AT www.JEWISHSUPPLY.com

If you do not have internet, please have someone who has internet place this order for you. If that is impossible, you will need to call Aleph's Shipping Dept. at 305-864-5553 or email shipping@jewishsupply.com to receive permission to place the order another way. Orders that are faxed in or placed via email without prior approval will not be processed.

DONATION REQUESTS; Please fill out this form, scan & email it to passover@aleph-institute.org to be processed. Please call 305-864-5553 to confirm that your order has been received or if you have any difficulties emailing your order.

>>IF YOU ARE REQUESTING A DONATION, YOU ORDER MUST BE ACCOMPANIED BY AN UPDATED LIST OF THE JEWISH INMATES AT YOUR INSTITUTION. IF THIS CANNOT BE PROVIDED, PLEASE CALL RABBI KATZ AT 305-864-5553.

MR./MS./CHAPLAIN: _____

INSTITUTION: _____

ADDRESS: _____

E-MAIL: _____

TEL: ( ) _____ - _____ ext. _____   FAX: ( ) _____ - _____   NO. OF JEWS: _____

| ITEM | PRICE | QUANTITY | TOTAL PRICE |
|---|---|---|---|
| MATZAH 1 lb. box (30 per case) | $3.50 ea. | _____ | |
| SHMURAH MATZAH (special handmade) 6 Matzahs | $13.00 | _____ | _____ |
| GRAPE JUICE BOTTLES (64 oz. ea.) (Plastic) | | _____ | AVAILABLE FOR DONATION ONLY |
| GRAPE JUICE CASE (case-8 x 64 oz. Plastic) | $55.00 | _____ | _____ |
| PAPER Juice boxes*) (case 40 x 6.75 oz.) (*PAID Orders Only) | $55.00 | _____ | _____ |
| HORSERADISH - WHITEONLY (9 Gram Packets) 25 Packets | $3.50 | _____ | _____ |
| 200 Packets | $25.00 | _____ | _____ |
| HORSERADISH - (9/case) WHITE SAUCE SPREAD* (9.5 oz Squeeze bottle) (*PAID Orders Only) | $4.75 ea. | _____ | _____ |
| GEFILTE FISH (12/case) (8 pieces 27 oz. can) | $8.00 ea. | _____ | _____ |
| SOUP BOUILLON CUBES (package of 3) 12/case | $1.75 ea. | _____ | _____ |
| MACAROONS (12/case) (10 oz.) | $4.50 ea. | _____ | _____ |
| HAGGADAHS (Booklet read during the Passover Seder service) | $3.00 ea. | _____ | _____ |
| "HOW TO" PASSOVER VIDEOS | $25.00 ea. | _____ | _____ |

| ITEM | PRICE | QUANTITY | TOTAL PRICE |
|---|---|---|---|
| Bittersweet Chocolate Bar (3.5 oz.) (100/Case) | $3.00 | _____ | _____ |
| Milk Chocolate Bar (3.5 oz.) - (100/Case) | $3.00 | _____ | _____ |
| SHELF STABLE CHICKEN & MATZAH BALL SOUP (12/Case) (non-gebrokts) (*PAID Orders Only) (12 oz. in Rexon Plastic) | $6.00 ea. | _____ | _____ |
| SHELF STABLE CHICKEN W/ POTATOES* (12/Case) (*PAID Orders Only) (12 oz. in Rexon Plastic) | $6.00 ea. | _____ | _____ |
| SHELF STABLE BEEF GOULASH AND VEG.* (12/Case) (*PAID Orders Only) (12 oz. in Rexon Plastic) | $6.00 ea. | _____ | _____ |
| SHELF STABLE BEEF STUFFED CABBAGE.* (12/Case) (*PAID Orders Only) (12 oz. in Rexon Plastic) | $5.50 ea. | _____ | _____ |
| SHELF STABLE GEFILTE FISH* (12/Case) (*PAID Orders Only) (12 oz. in Rexon Plastic) | $5.50 ea. | _____ | _____ |
| 6 SHELF STABLE HARD BOILED EGGS (in Saltwater) - (12/Case) (12 oz. in Rexon Plastic) | $5.00 ea. | _____ | _____ |
| Heat & Serve MASHED POTATOES (Just add hot water!) (12/Case) 4,6 oz. Pouch | $4.00 ea. | _____ | _____ |
| Albacore Tuna Pouch 3 oz. Pouch | $2.75 ea. | _____ | _____ |
| SEDER PLATES (You only need to add Romaine lettuce) (Now comes with 6 Shelf-Stable Hard-boiled egg and salt water)! Includes plastic plate with pre-designed slots filled with special Passover Seder ritual items | $32.50 | _____ | _____ |

Please advise if your order is for the entire Passover or only for the Seder meals:   **Check one:** ☐ **1 Seder Meal Only**   ☐ **2 Seder Meals**   ☐ **Entire Passover holiday**

• **If you have no funds available, check here:**☐

Donated orders: We will only ship donated orders on condition that all Passover food items will be distributed exclusively to Jewish inmates for their use to meet their Passover religious requirements and the entire order will be distributed during Passover to them including any "extra" or excess remaining items. (These items should not be used before Passover for a mock Seder. Extra grape juice and matzo can be kept for Sabbath observances)

• *IMPORTANT: Please notify the warehouse of incoming food items to expedite delivery of your order.*

• *Items should arrive no later than 4-6 days before Passover under normal circumstances.*

Exhibit D    (B-5)   24

# 2017 INMATE PASSOVER ORDER FORM

**Deadline for Submission to Chapel – Wednesday, February 22nd**

NAME: _____

REGISTER #: _____

|              | AVAILABLE ITEMS | UNIT PRICE |
|--------------|-----------------|------------|

**LIMIT OF 14 COMBINED MEALS (Separate SPO Form)**

| | AVAILABLE ITEMS | UNIT PRICE |
|---|---|---|
| ____ | SHELF STABLE CABBAGE WITH BEEF | $4.25 |
| ____ | SHELF STABLE CHICKEN AND MATZAH SOUP | $4.25 |
| ____ | SHELF STABLE BEEF GOULASH AND VEGETABLES | $4.75 |
| ____ | SHELF STABLE GEFILTE FISH | $4.25 |

**LIMIT OF 7 EACH**

| | | |
|---|---|---|
| ____ | SOUP BOUILLON CUBES | $1.65 |
| ____ | HORSERADISH | $4.25 |
| ____ | MILK CHOCOLATE | $2.60 |
| ____ | BITTERSWEET CHOCOLATE | $2.60 |
| ____ | MATZAH | $2.95 |
| ____ | SHMURAH MATZAH | $13.00 |
| ____ | MASHED POTATOES | $3.90 |

TOTAL ORDER PRICE: _____

-PLACE A QUANTITY ON THE LINE NEXT TO THE ITEM THAT IS BEING REQUESTED.

-COMMISSARY STAFF WILL PLACE A NOTICE WHEN ITEMS ARE AVAILABLE FOR PURCHASE.

INMATE SIGNATURE : _____

**A SIGNED SPO FORM MUST ACCOMPANY THIS ORDER REQUEST**

EXIBIT E                    (B-6)

## 3.4 PRICING

The selling price of each item sold in the Commissary is calculated automatically in TRUFACS based on the actual cost and mark-up of the item. Use the following procedures to determine selling prices.

a. **Cost Price.** The cost of an item is established in TRUFACS when the initial Receiving Report is generated. The cost is based on a **sellable unit**, defined as the smallest individual unit sold in the Commissary. In the rare case when the purchase of a non-SPO regular item includes a shipping charge, the shipping charge shall not be included when determining the cost price of the item.

b. **Mark-up and Selling Price Computation.** The mark-up for the selling price of each item ordered and sold in the Commissary is automatically calculated based on the cost and mark-up selected in TRUFACS. The mark-up is based on the following:

0%          See paragraph d. below.

30%         Standard items/SPOs purchased.

Pre-Printed     Sales price printed on packaging (see below).

Non-Physical     Selling price of items not physically maintained in inventory (e.g., photo vouchers).

Generally, the Federal Government does not pay taxes (State, local, or Federal) on purchases. However, when payment of taxes is required, these steps are followed:

Divide the total tax charge(s) by the number of sellable units taxed.
Add the tax per sellable unit to the cost price of the lowest sellable unit.
Use this amount as the cost price for receiving purposes.

Occasionally, the selling price, rounded to the next highest nickel, may exceed the manufacturer's printed price. Then the selling price must be set at the manufacturer's pre-printed price, even though it may be in odd cents. In instances when the calculated selling price is less than the manufacturer's printed selling price, the calculated selling price is used. Pre-printed applies only to pre-printed, packaged, "across the counter" sales items (potato chips, pretzels, etc.). It does not apply to catalog prices such as those for SPO items (e.g., leather companies' catalogs).

c. **Coupons/Tokens.** Coupons or tokens sold through the Commissary and used to purchase items or services are, without exception, marked up in the same way as stocked items.

d. **Selling Price With No Mark-up.** The following items have no mark-up added to the cost

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(B-7)

and are not rounded to the next $0.05:

Postage.

Self-improvement textbooks.

Correspondence courses.

Tools and materials for educational/vocational training.

Law books or other legal materials.

Religious articles (excludes edible items).

Smoking Cessation Program materials.

**Passover** meals during **Passover**.

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(B-8)

Regarding the Passover SPO, the meals are not marked up. The other items, which are not meals, but considered snack items are marked up the 30% in accordance with policy.

B. Cieslukowski

1/31/2017



EXHIBITS C-1 THRU 3

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Bendyna, James H.      40866-050      Unit-2A      USP-Allenwood

         LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A- INMATE REQUEST** The reply to my BP-8 from Chaplain Cieslukowski is a complete fabrication of FBOP policy, and an outright lie to what he had stated to his peer Chaplain Moore that was relayed to the entire Jewish Community. When Chaplain Moore was asked if **"any"** of the items on our SPO Passover forms were/or going to be marked-up, he stated, "According to the email he received none of the prices are marked-up..." and again when asked then why are we being asked to fill out two seperate SPO order forms, he had no answer and had in his words, "I do not know why, I'm only following orders. You need to ask Chaplain Cieslukowski." It is quite clear and obvious that what prices were set by Aleph and published were clearly marked-up by 30% making Chaplain Cieslewkowsi's statements fabricated and untruthful. Mr. Cieslukowski also goes on to state that it is in accordance to policy that snacks (which is termed: a small amount of food eaten between meals, a light "meal" that is eaten in a hurry or in a casual manner.) which are not **"meals"** can be marked-up 30%. This is another outright fabrication of the A) Englis language; and B)and a poor justification for quantum merit and unjust enrichment. Which is a violation of PA Statutes under trade/commerce. Also, what Chaplain Cieslukowski deems as a **"meal"** are in fact two "entrees" one "soup" and the last is considered a "side-dish/appetizer" and the definition of each is clear that an "entree" is: The main course of a "meal"; and a "side-dish" is:A dish served as a subsidiary to the main one; and an "appetizer" is: a small dish of food or a drink taken before a "meal" or the main course of a "meal" to stimulate one's appetite. Even if they were to claim that the "snacks" are desserts, the definition of dessert

2/ 2017 [DATE]      (continued on attached page)      SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____ DATE                 WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 890850-F1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                            CASE NUMBER:

**Part C- RECEIPT**                (C-1)

Return to: _____

          LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____               ⊛ PRINTED ON RECYCLED PAPER        RECIPIENT'S SIGNATURE (STAFF MEMBER)

        DATE

USP LVN                                                BP-229(13)
APRIL 1982

(Continuation Page BP-9)

...is: The sweet course eaten at the end of a meal.  And what does "course" mean: A dish, or a set of dishes served together, forming one of the successive parts of a **"meal"**.

So it is very clear how the term "meal" is defined and all of its contents (i.e. snack, dessert, course, etc.) of what makes up a meal are unambiguous, and combined that FBOP policy clearly states, "Passover **"meals"** during Passover." with no breakdown in its definition of its intent and meaning other than what is commonly understood as what is a **"meal"** and what is contained therein of that definition. The problem also clear that either Chaplain Cieslukowski is A) unknowing/understanding of the English language; or B) is making unfound statements to support his obvious prejudice and discriminatory acts.  I believe it is the latter.

I again re-state all facts and statements stated within my BP-8 within this BP-9 and request Chaplain Cieslukowski to cease and desist any further prejudice and discrimination of our religious practices and beliefs and all contained within those beliefs.  This is to include any/or all SPO orders, requests for religious needs, or other that are not supported by any retional penalogical interest or gross abuse. Also, to cease and desist any/or all illicit mark-ups to religious items and Passover meals (that includes, soups, snacks, etc.) since policy dictates that there is to be no mark-ups as of the writing of this BP-9 and to withdraw his limitations on items ordered at other USPs (i.e. macroons, shelf-stable chicken & potatoes, hard-boiled eggs, etc.) as offered from Aleph 's order sheets that are FBOP Central Office Rabbician Chaplaincy approved immediately.  Unless, Chaplain Cieslukowski can show a clear penalogical or gross abuse being violated for allowing us to order said items that has not been provided at this point.

February 1, 2017

Respectfully submitted,

James H. Berdyna
Reg. #: 40866-050
FCC; USP-Allenwood
P.O. Box 3000/Unit-2A
White Deer, Pennsylvania 17887

(C-2)

BENDYNA, James
Register No.:  40866-050
Appeal No.: 890850-F1
Page 1

---

### Part B - Response

This is in response to your Request for Administrative Remedy in which you claim Kosher for Passover items available for purchase should not be subject to a 30% markup by the Commissary.  You also state you should not be limited in what you are able to purchase from the approved vendor.

Program Statement 5360.09, Religious Beliefs and Practices, stipulates, "The Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons."

Items purchased via the Special Purpose Order (SPO) process are subject to the policy and procedures of the Trust Fund Department.  Program Statement 4500.11, Trust Fund/Deposit Fund Manual, states, "Consumable items and medical items sold shall complement, not supplement, diet and medical care provided to the inmate population."  The items sold by the Commissary are meant to be used along with the Kosher for Passover meals served to Passover participants by Food Service.  The items provided for purchase via an SPO are sufficient to complement the meals you will be provided by Food Service.  Section 3.4, part 9 (d), of this policy lists items that are not subject to a Commissary markup.  Included in the list are Passover meals sold during Passover.  The SPO items available to purchase at FCC Allenwood are broken down into two categories: (1) items that are considered meals; these items are not marked up, and (2) items that are considered snacks; these items are marked up 30%.  The SPO forms are available in the Religious Services Department.

Accordingly, your Request for Administrative Remedy is denied. If you are not satisfied with this response, you may appeal to the Regional Director within 20 calendar days of this response.


L. J. Oddo                                        Date  2/10/17
Warden


(C-3)

**EXHIBITS D 1 THRU 3**

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Bendyna, James H.     40866-050     Unit-2A     USP-Allenwood

     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL** The reponse giving by USP-Allenwood's Warden is not based on actual or relevant FBOP policy. It is based on parts of policy that does not pertain to the issues I have raised, nor does what was stated actually exist within FBOP policy it is based on staff's opinions and prejudice towards the Jewish community to limit and deny us privileges and beliefs protected by the U.S. Constitution. In paragraph two of the "response" it suggests that what is being provided to us in our Passover SPOs are at the cost of the government. This is a misguding statement all together since the inmate is financially responsible for hi/her own Passover SPO purchases. Also, in paragraph three of the "response" it agin suggests that the items being purchased for Passover are provided/available in the institution's commissary when in fact they are not and USP-Allenwood has not nor does not sell on a regular basis "Glatt Kosher" food stuffs that comply with our religious laws during Passover. Nor what we are able to purchase via SPO from Aleph during Passover is a "one-time" oppurtunity and when ordered that transaction is final and the inmate does not and cannot make another order of these items if need be since the time it takes to process the SPO, order the SPO and receive the SPO in a timely fashion during Passover would never be fullfiled in time. Also, while the general population from week to week can if need be, are able to purchase items that diminish within their personal property to "complement" the appetites, we are limited to the "one-time" purchase for our necessary items. By limiting our SPOs we are being discriminated against by staff where

2/16/17 (continued see attached page)

DATE                 SIGNATURE OF REQUESTER

**Part B - RESPONSE**

*See Attached*

DATE               REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE           CASE NUMBER: 890850R1

**Part C - RECEIPT**

                                 CASE NUMBER: D-1

Return to: _____

     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

DATE              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN       PRINTED ON RECYCLED PAPER       BP-230(13)

JUNE 2002

Continuation Page BP-10

... they are dictating what and how much we are able to eat daily during Passover outside
of the three meals they must provide. In other words they are controling our diet and
eating habits by these limits where FBOP policy dictates an inmate is allowed up to $100
per one item in cost, and while the entire compound can spend $360.00/mos. we are again
discriminated against by these limitations , plus adding an additional 30% mark-up to
religious items and Passover meals during Passover that policy clearly states will NOT
be marked-up.  USP-Allenwood staff consider the dessert items as snacks (e.g.  soup
bouillon cubes, horseradish, chocolate bars, macaroons, matzahs and mashed potatoes) when
it is quite clear that ALL OF THESE ITEMS according to Oxford's Dictionary and the entire
global population (as well as the author of the policy) that these items are in fact all
part of a "meal".  If the author of that policy intended or imagined that FBOP staff would
not comprehend his/her intentions behind the meaning of the word "meal" or clearly know
what or wasn't incorporated in a "meal" then he would've made specific outlines of what
he considered to be included in a "meal" and what would not be included.  I don't believe
that the author even could imagine that ANYONE would or could not understand or interpret
his/her statement.  The word "meal" is understood quite well and is a most commonly used
word globally that there could never be any misconception to its meaning.

Since the writing of my BP-9 and this BP-10 our community has placed a request for
a Ceremonial meal and since there would be at the most 10 participants attending the group
believed as has been the norm in the past as well at other institutions a menu we thought
would be acceptable.  Our menu requests are all denied and I believe its in retaliation
for my filing of grievances against Religious Services and being used as a punishment
towards the group for my use of the Administrative Remedy Process.

I want all limitations and all requests outlined within my BP-8 & BP-9 granted since
they meet FBOP criteria and are being met at other FBOP Institutions without limitations
or illicit mark-ups.  I am also filing a Temporary Court Injunction at this moment to seek
the courts for assistance against any more anti-Semetic behaviour.

Respectfully submitted,

February 16, 2017

James N. Bendyna  40866-050
FCC; Allenwood-USP
P.O. Box 3000/Unit-2A
White Deer, Pennsylvania 17887

(D-2)

**BENDYNA, James**
Reg. No. 40866-050
Appeal No. 890850-R1
Page One

### Part B - Response

You appeal the decision of the Warden at USP Allenwood regarding various issues concerning the purchase of religious items and kosher meals.  You specifically express a concern with the 30% markup as applied to religious items and kosher meals.  You request that all markups be removed and limitations be lifted from kosher items.

A review of your appeal reveals the Warden addressed your numerous concerns regarding the purchase, processing and handling of special meals and kosher items.  As explained by the Warden, Program Statement 4500.11, <u>Trust Fund/Deposit Fund Manual</u>, addresses the issues you raise and support the activities of the institution. There is no information provided to require changes to the current procedures in place at USP Allenwood. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons.  Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: March 29, 2017

M. D. CARVAJAL
Regional Director



<u>**EXHIBITS E-1 THRU 2**</u>

Bendyna 40866-050    Reg Svcs

Central Office Administrative Remedy Appeal

5/9/17
2A # 03

U.S. Department of Justice

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Bendyna, James H.__ _____ __40866-050__ ____ __Unit-3B__ ____ __USP-Allenwood__
      LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.        UNIT           INSTITUTION

**Part A - REASON FOR APPEAL.** Regional Director, M.D. Carvajal's response does not answer the complaint as outlined within my BP-10, and previously stated within my BP-9. In fact, the tone of the RegionalDirector is condescending in manner. To be clear the Warden never did address my "numerous" complaints (there is only one), nor did the Supervisory Chaplain, Mr. Cieslukowski answer the issue within the BP-8. What was provided was a bastardized version of FBOP policy, specifically, Program Statement 4500.11 -Trust Fund/Deposit Fund Manual- within this policy it is very clear what is and is not to be marked-up by 30%, and yet, staff pathetically attempt to re-invent the wheel (in this case the entire English language). My language in this appeal may be a bit arrogant and even a tad bit belittled in manner itself, but even when faced with simple facts and policy that a lay-person can construe as forthwith and clear, but USP-Allenwood along with Regional staff cannot seem to understand, let alone admitt that they may be wrong. When in fact I made this same exact argument at FCI; Williams-burg in South Carolina circa 2013-14 and had not only my Passover SPO 30% mark-up refunded, but the entire Jewish community was refunded as well. I restate my entire argument outlined within my previous Administrative Remedies and attached hereto with this Appeal as supporting evidence. I request that this act of unjust enrichment cease and desist and any/or all funds acquired by this illegal 30% mark-up be refunded immediately and no longer be performed in future Passover SPOs.

__April 19, 2017__ _____
    DATE                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

(E-1)

*Handwritten: Thompson no fish*

| | Mon. 4/10 | Tues. 4/11 | Wed. 4/12 | Thur. 4/13 | Fri. 4/14 | Sat. 4/15 | Sun. 4/16 | Mon. 4/17 | Tues. 4/17 |
|---|---|---|---|---|---|---|---|---|---|
| **Breakfast** | | Plain Omelet, Fresh Fruit, Jelly PC 2, Margarine 2, Matzo, Coffee 1, Sugar Sub. 2 | Cheese Omelet, Fresh Fruit, Jelly PC 2, Margarine 2, Matzo, Coffee 1, Sugar Sub. 2 | Plain Omelet, Fresh Fruit, Jelly PC 2, Margarine 2, Matzo, Coffee 1, Sugar Sub. 2 | Cheese Omelet, Fresh Fruit, Jelly PC 2, Margarine 2, Matzo, Coffee 1, Sugar Sub. 2 | Continental Breakfast: Tuna, Cream Cheese, PC 1, Fresh Fruit, Jelly PC 2, Matzo, Coffee 1, Sugar Sub. 2 | Cheese Omelet, Fresh Fruit, Jelly PC 2, Margarine 2, Matzo, Coffee 1, Sugar Sub. 2 | Plain Omelet, Fresh Fruit, Jelly PC 2, Margarine 2, Matzo, Coffee 1, Sugar Sub. 2 | Cheese Omelet, Fresh Fruit, Jelly PC 2, Margarine 2, Matzo, Tea 1, Coffee 1, Sugar Sub. 2 |
| **Lunch** | Roast Beef, Entrée, Margarine 2, fresh fruit, Matzo, Grape Juice, Bouillon Cube, Tea 1, Sugar Pc 2 | Tuna, Soup, Fresh Fruit, Margarine 2, Matzo, Grape Juice, Tea 1, Sugar Pc 2, Dessert | Roast Chicken, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Dessert | Roast Beef, Entrée, Margarine 2, Fresh Fruit, Matzo, Tea 1, Bouillon Cube, Sugar Pc 2, Dessert | Salmon Entree, Fresh Fruit, Margarine 2, Matzo, Tea 1, Bouillon Cube, Sugar Pc 2, Dessert | Tuna, Soup, Fresh Fruit, Margarine 2, Matzo, Tea 1, Bouillon Cube, Sugar Pc 2, Dessert | Salisbury Steak, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Bouillon Cube, Sugar Pc 2, Dessert | Stuffed Shells, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Dessert | Roast Chicken, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Tossed Salad |
| **Dinner** | Seder Plate, Roast Chicken, Entrée, Fresh Fruit, Margarine 2, Matzo, Grape Juice, Tea 1, Sugar Pc 2, Dessert | Seder Plate, Beef Goulash, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Dessert | Eggplant, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Tossed Salad | Roast Turkey, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Tossed Salad | Beef Bologna, Soup, Fresh Fruit, Margarine 2, Matzo, Tea 1, Grape Juice, Sugar Pc 2, Tossed Salad | Pastrami/Cold Cut, Soup, Fresh Fruit, Margarine 2, Matzo, Tea 1, Applesauce-1, Sugar Pc 2, Tossed Salad | Roast Chicken, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Dessert | Filet Sole, Entrée, Gelfite Fish, Soup, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Tossed Salad | Roast Turkey, Entrée, Fresh Fruit, Margarine 2, Matzo, Tea 1, Sugar Pc 2, Tossed Salad |

*Handwritten: (E-2)*

**EXHIBITS F -1 THRU 9**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES H. BENDYNA JR.          (
          Plaintiff            (
                              (
v.                            (          ORDER TO SHOW CAUSE FOR AN PRELIMINARY
                              (          INJUNCTION AND A TEMPORARY RESTRAINING
FEDERAL BUREAU OF PRISONS,     (                         ORDER
WARDEN MR. L.J. ODDO,          (          Civil Action No.:_____
ASSOCIATE WARDEN MR. D. WHITE, (
SUPERVISORY CHAPLAIN MR. B.    (
CIESLUKOWSKI, et al.,          (
          Defendant            (

     Upon the complaint, the supporting affidavits of plaintiff, and the memorandum
of law submitted herewith, it is:

     ORDERED that defendants, federal Bureau of Prisons, Warden Mr. L.J. Oddo, Assoc.
Warden Mr. D. White, Supervisory Chaplain Mr. B. Cieslukowski, et al., show cause in room
_____ of the United States Courthouse, U.S. District Court, Middle District of
Pennsylvania, William J. Nelson Federal Building & U.S. Courthouse, 235 N. Washington Ave.,
Scranton, Pennsylvania 18501 on the _____ day of _____, 20___, at _____
o'clock, why preliminary injunction should not issue pursuant to Rule 65(a) of the Federal
Rules of Civil Procedure enjoining the defendants, their successors in office, agents and
employees and all other persons acting in concert and participation with them, from any
further acts of:

     A)  Religious Beliefs and Privilege prejudice and discrimination pursuant to
the Religious Freedom Reformation Act (RFRA) 42 U.S.C.S. § 2000bb-1(c), the Religious
Land Use & Institutionalized Persons Act (RLUIPA) 42 U.S.C.S. § 2000cc-1(a), the United
States Constitution's First Amendment's Constitutional Law §§ 925,936 –Conditions on
Benefit or Privilege– - & § 936 –Permissible Limitations–, Federal Bureau of Prisons
(FBOP) Program Statement 5360.09 –Religious Beliefs and Practices– and the laws and
rituals of the Jewish faith from :

     1.  any FBOP staff member from interfering with Jewish laws and rituals
     from being practiced in accordance with that law (Kashruth); or

     2.  intentional limitations or denial of religious items that are not being
     limited or denied at other FBOP institutions without justified rationale of a
     gross abuse or penalogical interest being violated in writing in advance to
     effectively alert the Jewish population with enough time to appeal or seek an
     alternative to the violation pursuant to the rules outlined in **Turner v. Safley**,
     482 U.S. 78 (1987).

(Page 1 of 2)

(F-1)

These acts include, but not limited to any acts of staff misconduct against the plaintiff for accessing the Administrative Remedy Process or the U.S. Courts for intervention/redress.  "Staff misconduct" is defined as any act of reprisal or retaliation, refusal of materials necessary in plaintiff's furtherance of remedy or redress or any limitation of these items (e.g. typing materials, legal materials [i.e. books, forms, case information, etc.], adequate copies and mailing items).  Placement in Special Housing Unit (SHU) or transfer from institution based on the above-forementioned acts of staff misconduct or the likewise, as well as any act of excessive abuse of authority to use against or justify his/her acts (i.e. fabrication of Incident Reports (IR), intententional theft, destruction, loss or confiscation of allowable personal property in accordance with FBOP policy or excessive shake-downs or personal searches outside of normal protocols and operating procedures for conducting such, etc.) against plaintiff.

IT IS FURTHER ORDERED that effective immediately, and pending the hearing and determination of this order to show cause, the defendants The Federal Bureau of Prisons, Warden Mr. L.J. Oddo, Assoc. Warden Mr. D. White, Supervisory Chaplain Mr. B. Cieslukowski and each of their officers, agents, employers, and all persons acting in concert or participation with them, are restrained from the same/similar acts as mentioned in the above-forementioned request for Preliminary Injunction and Temporary Restraining Order until the courts make their determination.

IT IS FURTHER ORDERED that the order to show cause, and all other papers attached to this application, be served on the aforesaid Plaintiffs by  March 1, 2017.

Judge's signature: _____

Dated: _____

United States District Judge: _____

_____



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES H. BENDYNA JR.,        (
        Plaintiff        (
                (
v.        (        __AFFIDAVIT/DECLARATION OF__
                (        __JAMES H. BENDYNA JR.__
FEDERAL BUREAU OF PRISONS,        (
WARDEN MR. L.J. ODDO,        (        Civil Action No.:_____
ASSOCIATE WARDEN MR. D. WHITE,        (
SUPERVISORY CHAPLAIN MR. B.        (
CIESLUKOWSKI, et al.,        (
        Defendants        (

    I, James H. Bendyna Jr., being competent to make this Affidavit/Declaration and having personal knowledge of the matters stated therein, declares pursuant to 28 U.S.C.S. § 1746 hereby states as follows:

    Upon my arrival to USP-Allenwood, I had gone to Religious Services to let the chaplain/s there know I was a new arrival and a member of the Jewish community as per policy and FBOP rules and regulations. During that time I had requested that I wanted to be signed up for all upcoming Jewish high Holy Days (i.e., Rosh Hashanah, Yom Kippur and Sukkot) since our biggest Holy Days were soon approaching. At this point I had asked Chaplain Knapp what were their procedures and protocols for celebrating these Holy Days at USP-Allenwood, he directed me to come again and see a Chaplain Cieslukowski. A few days later I met with Chaplain Cieslukowski (who turned out to be the Supervisory Chaplain for FCC; Allenwood) where he had expressed that what was to be expected for each Holy Day. What he had explained was not only perculiar, but not what is normal protocol at other FBOP Institutions (e.g. no Challah ordered for any of the Holy Days, only one container of fruit for @ 4-7 people to share [each container holds @ 18-22 pieces of dates], no Sukkot Tent for the upcoming Sukkot for "security" reasons, etc.) for proper observance of our laws and rituals to our beliefs. I expressed this is not only wrong and would violate our right to practice our beliefs, but the items I'd requested and what is provided at other FBOP Institutions are as they always have been within the FBOP and are in complete compliance with FBOP policy and rules and procedures. Also, I had pointed out that if one inmate (anywhere) is provided these items then all inmates are to be provided them. Chaplain Cieslukowski had replied to my request that for Rosh Hashanah we be provided Challah bread, Honey and on the first night apples and dates for the second for which he should provide at least one container per 2-3 inmates and not the one for the entire group as he has done on previous Holy Days, and to provide a Sukkot Tent for Sukkot along with Challah bread (which is customarily eaten with all

(F-3)

our meals during Sukkot) for each member of the community for Sukkot. He refused to and I had to approach Associate Warden Smith where he, Chaplain Cieslukowski and myself came to a compromise to my request. He would provide two containers fo dates and would provide Challah bread (one loaf) for both days of Rosh Hashanah, a Sukkot Tent and Challah bread (one loaf) for each participating Jewish member for the first two days and last two days of Sukkot along with Grape juice (two per day) for the same four days of Sukkot.

   Prior to Sukkot I was placed in Special Housing Unit (SHU) for an unrelated incident in the Unit. On the days in question I was only provided Matzohs for the first two days of Sukkot and was told because I was in SHU I am not to be provided what the other members would be provided. I spoke to Warden Oddo who stated I was to get exactly what was provided to other members regardless of my placement in SHU. I began my Administrative Remedy Process (BP-9) Institution Formal Resolution, where it was initially denied for non use of the Informal Resolution (BP-8) where FBOP policy clearly states that inmates are to be encouraged and not mandated to attempt informal resolution of issues, especially never to refuse an inmate upon request his access to formal resolution (BP-9 or BP-10 Regional Appeal Resolution) which the Administative Remedy Coordinator had attempted to do and eventually processed my grievance upon second submission (see attached Administrative Remedy # 880879-F1 and Informal Resolution). After I re-filed my grievance Chaplain Knapp had approached with a vanilla Informal Resolution/Waiver form he wanted me to sign agreeing that they would comply with our community needs from that point forward, even though nowhere was this agreement stated anywhere in writing on this form. So I refused until all the Chaplain and I had come to a final agreement to. The next day Chaplain Cieslukowski came with a new form that was still vanilla in what was completly covered, but that was the best I was going to get, and he gave me his word as a man and a Chaplain that whatever we needed would be granted as long as it did not effect compound security and is within FBOP policy's rules and regulations.

   Sometime in January our community was provided order forms for Passover Special Purchase Orders (SPOs) (which the items sold to our community is and has been normally provided FBOP wide from Aleph and is advertised within their monthly publication The Liberator, which I receive) not only were the prices way out of range of what was sent by Aleph, Religious Services wanted to mark-up another 30% items they already marked-up by asking us to fill out two seperate SPO forms (i.e. making Chocolate Bars sold at $2 to inmates and $3 for Institution staff, Allenwood staff marked-up to $3.90 and with an additional 30% making that Chocolate Bar $5.10) where they could again up-charge us an additional 30% which is not only illegal, but in violation to FBOP policy. I again had

(F-4)

started my Administrative Remedy Process and to date I've been denied access to materials again should be provided as per FBOP policy (typing materials that should be provided by Education staff and are not unless you are "indigent" where this is NOT required in policy [the items I'm currently using to type these motions, etc. are all borrowed from other inmates], Food Service's Ms. Kennedy denying items requested to be made for our annual Ceremonial meal [see attached copies of menu request and email sent] that not only follow policy, but have been allowed by other religious groups here and at other Institutions.

At each turn I'm denied requests that should be provided as per policy (e.g. copies of 2014, 2015 and 2016's annual Chaplaincy Budget Reports, Ceremonial meal menus for all religious groups, etc. [see attached request for information]). I am now at this point seeking the courts for redress and pray they are able to intervene. So far Chaplain Cieslukowski has placed Macaroons back on the SPO Passover order forms and the prices reduced, but still incorrect and  the rationale provided in my BP-9 response does not follow any logic or policy as it stands and should be interperted. Finally, the members upon recieving their SPO orders are to open ALL Macaroons remove the contents into a "plastic" bag not only contaminating them, but forcing us to eat them all in the same day or not all depending when they arrive and when contamination occurs as our Laws of what we eat and consume are extremely stringent and are taken very seriously during this period. I am told this the Captain's orders and the containers the macaroons arrive in (which is exactly like the Pringle containers in that it is a cardboard tube closed at one end with a thin aluminum cap and the other an aluminum rim with a foil peel-away seal and plastic lid to keep contents sealed and fresh) are a security issue. Funny though many inmates drink and purchase soda sold in aluminum cans sold here in our commissary weekly, and cans of Pringles from other Institutions are allowed on the compound or giving away by staff from Recreation as prizes, and these same cotainers are allowed to be in inmates possession at other USPs in the FBOP. I ccannot see the logic used to justify this act except that our group is being targeted against by prejudiced and anti-semetic staff.

Pursuant to 28 U.S.C.S. § 1746, I declare under penalty of perjury that the foregoing is true and correct. This Affidavit/Declaration was executed on February 27, 2017, at USP-Allenwood in White Deer, Pennsylvania.


Respectfully submitted,

James H. Bendyna/ 40866-050
FCC; USP-Allenwood
P.O. Box 3000/Unit-2A
White Deer, PA 17887

(Page 3 of 3)

(F-5)

## Memorandum of Law

1) **FBOP Program Statement 4500.11-Trust Fund/Deposit Manual-Pricing-§ 3.4(d): Selling Price With No Mark-up.** The following items have no mark-up added to the cost and are not rounded to the next $0.05:

* Postage,
* Self-improvement textbooks,
* Correspondence courses,
* Tools and materials for educational/vocational training,
* Law books or other legal materials,
* Religious articles (excludes edible items),
* Smoking Cessation Program material,
* **Passover meals during Passover.**

FBOP Program Statement 4500.11 outside of this outline was never broken down by it's drafting author of what was or was not considered a meal or what constitutes a meal. By this lack of extended definition in policy one must assume the author intended that the individual who reads this then should go by what is universally understood as what the term/word meal means. To get a clear definition of this term/word if one does not know or does not comprehend the definition of meal one must use the English Dictionary to get a clearer understanding of this term/word.

Webster's New World Dictionary states that the word meal is defined as, "any of the times for eating, as lunch or dinner; and the food served at such a time (e.g. main entree, a course(s), side-dish/accompaniments, soup, salad, beverage, a **snack/dessert**, etc.)." it goes on to define each item as either part of a meal, a light meal or in concert with a meal. And it also defines clearly that a "snack" is, " any small portion of food eaten to satisfy one's appetite, a **"light meal"** eaten between the main meals of the day."

By the definitions provided universally to all English speaking individuals by the author and Webster it is clear that the author intended his/her meaning to incorporate all the above-fore-mentioned items as some type of meal or a part of a meal.

2) **Turner v. Safley, 482 U.S. 78 (1987); 42 U.S.C.S. § 2000bb-Religious Freedom Reformation Act (RFRA); 42 U.S.C.S. § 2000cc-Religious Land Use & Institutionalized Persons Act (RLUIPA); Constitutional Law: §§ 925,936-Conditions on Benefit & Privilege. § 936-Permissable Limitations, §§ 521,966-Inmate Rights (Civil Rights § 4.5), Jewish Torah and Rabbinic Laws.** In **Turner v. Safley** it states in part, "A prison regualtion that impinges on inmates' federal constitutional rights is valid if the regulation is reasonably related to legitimate penelogical interests; under this standard, (1) there must be a valid and rational connection between the prison regulation and the legitimate and neutral governmental interest put forward to justify the regulation, (2) if the connection between the regulation and the asserted goal is arbitrary or irrational, then the regulation fails, irrespective of whether other factors tilt in its favor, and (3) courts should also consider (a) the existence of alternative means of exercising the right that are available to inmates, (b) the impact that the accomodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally, and (c) the absence of ready alternatives available to the prison for achieving the governmental objectives.";

In 42 U.S.C.S. § 2000bb-1 **Free exercise of religion protected**: (a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b). (b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that the application of the burden to the person-- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling

(F-6)

governmental interest.  (c) Judicial relief. A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution.;
In 42 U.S.C.S.  § 2000cc-1 **Protection of religious exercise of institutionalized persons:** (a) General rule. No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C.S. 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-- (1) is in furtherance of a compelling governmental interest; and  (2) is the least restrice means of furthering that compelling governmental interest. (b) Scope of application. This section applies in any case in which-- (1) the substantial burden is imposed in a program or activity that recieves Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.;
Under **Constitutional Law §§ 925,936 Conditions on Benefit & Privilege:** Liberties of religion and expression may be infringed by the denial or placing of conditions upon a benefit or privilege.; and
Under **§ 936 Permissable Limitations:** Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation of religious freedom, no showing merely of a rational relationship to some colorable state interest will suffice.; and
in (**Civil Rights § 4.5**) **Constitutional Law §§ 521,966:** Incarceration does not divest prisoners of all federal constitutional protections; thus, inmates retain the right to be free from racial discrimination, the right to due process, and certain protections of the Constitution's First Amendment (including, but limited to freedom of religious expression). And finally in accordance to  **The Torah & Jewish Rabbinic Laws- Passover/Seder observance:** Passover is the Jewish Holy Holiday in which we celebrate the miraculous Exodus of the Jewish people frm slavery in Egypt that occurred in the year 2448 after creation (1313 BCE).  Passover is observed in commemoration of this historic event, each year on the 15th through the 22nd of Nissan -this year from Tuesday April 11th in the evening to the evening of Tuesday April 18th 2017.  The laws and customs of Passover help us prepare, spiritually and physically, for the liberation we experience at the Seder and through the festival. Passover's unique 'diet' is crucial: we eat matzah, the unleavened 'bread of faith', and we refrain from **chametz**, fermented of leavened grain.  Chametz is a general term for all leavened foods or drink, such as bread, cakes, cookies, pasta, beer, made from wheat, barley, rye, oats, spelt, or the derivatives, which we are **forbidden to eat**, or to even own, on Passover. Because we are not allowed to own chametz on Pesach, we sell it to a non-Jew before the holiday.  During this period the FBOP in Washington, DC instructs their chaplains to order enough kosher-for-Passover food before the holidays. In order to make sure we will be provided meals.  Kosher-for-Passover foods are considered foods that are not only kosher, but what is called kosher-parve or glatt-kosher with the appropriate symbols stamped on the packaging.  This is to say that the food contained in those specially marked packages are in compliance with the Laws of Passover and no Jew who eats of them will violate these Laws.

With the above-fore-mentioned being stated it is clear that an inmate has an inherent right to be able to practice his/her religious belief without fear of being discriminated against or limited in his ability to practice his belief. This also goes into that inmates privileges afforded him/her by FBOP policy and Constitutional Law, unless practicing that belief or afforded privileges to be able to practice said belief would jeopardize the orderly running of an institution, the safety of inmates and staff alike or that the privilege of belief has been or could be grossly abused with proper justification for the limitation or an alternative that is agreeable and not staff's assumption or speculation of a 'possible' threat to security or the probability that the

(F-7)

belief or privilege would be grossly abused.  As it is now, FBOP staff for the past few
years are and have been outside of their own written policy persistently attempt to limit
the Jewish community's privileges, Holy day meals and ritual items necessary for beliefs
practiced for many years within the FBOP in previous years with minimal interferance.  It
is becoming clear each year that Chaplains for their own prejudices either over charge,
deny, limit or claim lack of funds to afford the Jewish community their religious needs.
And on items each member is able to personally purchase via a SPO form are now being
manipulated in ways that appear that they hope one day will no longer be accessable to
the Jewish inmate.  They justify their rationale with explanations of policy that is
solely based on conjecture and fabricated definitions of terminology that is so absurd
to any rational person to even comprehend, or claim some imaginary security interest that
also is based on the same illogical theories and rationale.  For example we are to upon
receipt of our Passover SPOs if ordered, macaroons (which are packaged in a cardboard
container very similar to a wider and squater version of a Pringles® chip container) are
to be opened and emptied into 'plastic bags'.  Their rationale is the small round piece
of aluminum on the bottom of the container is the security risk, then if 'aluminum' is
a security risk then why are inmates sold soda in our commissary that's packaged in
aluminum cans and our trash-bins are filled with empty containers daily, and as I
mentioned previously, Pringles® from other institutions are allowed on the compound, as
well as given away as prizes from Recreation for holiday games.  Plus, in other USPs
these containers have been allowed and still are allowed to be on the compound for inmate
possession.  USP-Allenwood's justification fails on many levels and yet with the facts
presented to the Chaplain Jewish inmates are still made to open their macaroons for no
sound rationale.  The limitations set upon us is also baseless and prejudicial in manner.
While inmates during any normal holiday (e.g. Christmas, New Years, etc.) when specialty
items are sold in the commissary if an inmate makes a purchase of said items one week and
runs out of that item before weeks end can purchase more the following week if supplies
last.  Jews are only able to make their speciality purchases for Passover 'ONCE' and is
supposed to allow us to complement/supplement our appetites outside of the meals FBOP
Food Service must provide as to comply with our Rabbinic Laws. While inmates weekly can
purchase items (that may have limits only so supplies won't be drained to quickly, but
can be ordered each shop day until those supplies end) with no limitations except that
said inmate can only spend $360/mos. and up to $100 per one item, Jews are only allowed
to buy what 'STAFF' feel is adequate for complement/supplement to our meals where these
limits do not exist for the general population, let alone staff telling an inmate what
he/she needs to eat or how much to satisfy his/her appetite.  This is no different from
what the Nazis did to the Jews in Concentration camps in how they fed them or supplied
their dietary wants and needs.  Being told what I can and how much I can eat and at what
time I should be allowed to eat is cruel and unusual punishment by coercing and
intimidation of Jews.

   Finally, during Passover on the nights of Seder, one of the first things we do,
following after Kadesh and Karpas, is Yachatz, which is the breaking of the middle matzah.
Typically a matzah will break into two incongruent pieces. The larger piece, the Afikoman,
which literally means "desert," is stowed away to be saved for later, and the smaller piece
is set in front of us.  It is on this smaller piece, that Jews then recite the entire
Haggadah.  Many of the most crucial and integral parts of the Seder experience are prefaced
with the instruction: "Uncover the broken matzah" or "raise up the broken matzah."  This
matzah precisely because it is small and broken, aptly represents our "bread of afflicition,"
and "the food of poverty."  It is the quintessential matzah, and it plays a leading role
throughout the Seder drama.  After we conclude the Haggadah we then eat the entire matzah,
and with it we fulfill our biblical obligation of eaten matzah.  Even though all FBOP
chaplains understand the significance of this ritual, and how we hold matzh during this
time in reverance we are not only being up-charged on our SPO Passover order forms, it
is clear that these chaplains do not respect this reverance by calling it a snack.

F-8

## Certificate of Service

    I hereby certify that a true copy of the foregoing Motion for Preliminary injunction and Temporary Restraining Order was sent to the following entities using the United States Postal Service in an envelope affixed with the appropriate United States Postage.

### Entities Addresses

1) Federal Bureau of Prisons
   Central Counsel Offices
   Mr. Charles Samuels, FBOP Director

   320 First Street, N.W.
   Washington, D.C. 20534

2) Federal Bureau of Prisons
   Federal Correctional Complex; USP-Allenwood
   Warden Mr. L.J. Oddo

   P.O. Box 3000
   White Deer, Pennsylvania 17887

3) Federal Bureau of Prisons
   Federal Correctional Complex; USP-Allenwood
   Associate Warden Mr. D. White

   P.O. Box 3000
   White Deer, Pennsylvania 17887

4) Federal Bureau of Prisons
   Federal Correctional Complex; USP-Allenwood
   Supervisory Chaplain Mr. B. Cieslukowski

   P.O. Box 3000
   White Deer, Pennsylvania 17887

5) United States District Court
   Middle District of Pennsylvania
   Clerk of the Courts Office

   William J. Nealson Federal Building
   & United States Courthouse
   235 North Washington Avenue
   P.O. Box 1148
   Scranton, Pennsylvania 18501

Submitted Respectfully,

Date:_____

_____
James H Bendyna/ 40866-050
FCC; USP-Allenwood
P.O. Box 3000/Unit-2A
White Deer, Pennsylvania 17887

(F-9)

EXHIBITS G-1 THRU 12
(MISSING Documents)

NT OF JUSTICE                                    **REQUEST FOR ADMINISTRATIVE REMEDY**

...d of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **BENDYNA, JAMES H.**          **40866-050**        **3-B**        **USP-Allenwood**
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A- INMATE REQUEST** The response to my BP-8 does not answer my complaint, is not supported by any FBOP Policy, and oversteps the boundries set by the U.S. Courts. Nowhere is it written within FBOP Policy that for an inmate to receive a typewriter upon request (with all typing materials included) must said inmate be indigent or other. In fact, P.S. 1315.07-INMATE LEGAL Activities- Section h, in paragraph 10 that if practical staff will allow an inmate to use a typewriter, and if that inmate cannot type he can have another inmate type for him/her. "It suggests that this issue of a "Typewriter" is a "complete" working Typewriter." I've included my own personal copy of his Policy (please return after you've finished), could you 1) show me anywhere that I must be indigent to receive a complete working typewriter, and 2) where staff can dictate how I may file my legal filings. It is irrelevent that the courts may or may not accept handwritten documents, it is **not** staff's place by **law** to dictate such. Provide me with all necessary material As requested in my BP-8 or Allow me to use the BP-199 to do so.

1-26-17
DATE                                             SIGNATURE OF REQUESTER

**Part B- RESPONSE**

DATE                                             WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**SECOND COPY: RETURN TO INMATE**          CASE NUMBER: 861865-F1

**Part C- RECEIPT**                          CASE NUMBER:

Return to: _____          G-1
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____                      _____
DATE                                          RECIPIENT'S SIGNATURE (STAFF MEMBER)          BP-229(13)
                                                                                             APRIL 1982
USP LVN                          Previous editions not usable

BENDYNA, James
Register No.: 40866-050
Appeal No.: 889865-F1
Page 1

---

## Part B – Response

This is in response to your Request for Administrative Remedy in
which you request typewriter materials be provided to you.

Program Statement 1315.07, Legal Activities, Inmate, states:
"Unless clearly impractical, the Warden shall allow an inmate
preparing legal documents to use a typewriter, or if the inmate
cannot type, to have another inmate type his documents."
Inmates at USP Allenwood have access to typewriters for
preparation of legal materials, but are required to purchase
print wheels.  Inmates who are deemed indigent are provided
print wheels as a courtesy, but inmates with a debt encumbrance
are not.  Typically, the court will accept handwritten filings.

A review of your account reveals you recently completed payment
of your debt encumbrances.  On February 8, 2017, you spent
$20.55 on a variety of commissary items, to include batteries,
photo tickets, deodorant, lotion and talcum powder.  However,
you apparently chose not to purchase a typewriter print wheel.

Accordingly, your Request for Administrative Remedy is denied.
If you are not satisfied with this response, you may appeal to
the Regional Director within 20 calendar days of this response.


L. J. Oddo
Warden

Date 2/10/17

(G-2)



Inmate: 40866050 BENDYNA, JAMES
Period: 6 Months

Federal Bureau of Prisons
TRUSEEQ
Inmate - $ Funds In
Sensitive But Unclassified

Chart #

Funds In (#)

■ Western Union [] Money Gram ■ Lockbox [] Local ■ Payroll IPP ■ Payroll UNICOR

TF00607

1/26/2017 6:47 AM

(G-3)

Inmate: 40866050 BENDYNA, JAMES
Period: 6 Months

Federal Bureau of Prisons
TRUSEEQ
Inmate - $ Funds In
Sensitive But Unclassified

**Data #**

| Month | Western Union | Money Gram | Lockbox | Local | Payroll IPP | Payroll UNICOR |
|---|---|---|---|---|---|---|
| **Type: Month (4 items)** | | | | | | |
| Aug 2016 | 1.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Sep 2016 | 1.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Oct 2016 | 1.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Dec 2016 | 1.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Type: National Average (monthly) (1 item)** | | | | | | |
| | 1.7 | 0.3 | 0.2 | 0.0 | 0.7 | 0.0 |

5 rows found

つ: TF00607

Page 4 of 4

1/26/2017 6:47 AM

(ᢗ-᷄)

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

Bendyna 40 866-050          Legal (TYPING)          2/15/17 KL

**U.S. Department of Justice**                    **Regional Administrative Remedy Appeal**      JA (# G5

Federal Bureau of Prisons

---

Type or use bull-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From:  __Bendyna, James H.__      __40866-050__    __Unit-2A__    __USP-Allenwood__
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL** The Warden's response to my BP-9 is NOT supported by any FBOP policy, nor is it mandated as any written stipulation within said FBOP policy.  It is based on opinion and manipulation of FBOP policy by USP-Allenwood's staff.  In my BP-9 I clearly requested that staff provide me with an official copy of FBOP policy hwere A) an inmate "must" be indigent to be provided the necessary materials to use the offered typewriters (i.e. typewriter pinwheel, typeribbon, and correctional tape, etc.); and B) where it also states in FBOP policy that even though the U.S. Courts may accept motions that are handwritten, that any FBOP staff can/or have the authority to direct an inmate that he can and should file his/her motions or legal filings in that manner.  USP-Allenwood did not answer those questions, instead attempted to muddle the issue by pointing out I had used funds (while on $25.00 spending restriction) to purchase necessary hygeine items, batteries and photo tickets (for visitation with family I have not seen in years) I plan on using at visitation that I could've used to purchase a typewriter pinwheel (which costs $23.50) and did not. Beside the fact I also need a typeribbon (which costs $7.85) and a correction ribbon (which costs $1.55) totaling $32.90, $7.90 above what my monthly spoending limit is.  Unless the institution is saying that I'm responsible for purchasing my own typewriter pinwheel and they will supply the typeribbon and correction wheel upon request (which I don't understand why when I did ask for these items I was refused access to all of them).  Again, FBOP policy states if practical the institution will provide inmates

__2/16/17__          (continued see attached page)
      DATE                                                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

(G-5)

---

_____          _____
        DATE                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

**Part C - RECEIPT**

                                              CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

Continuation Page BP-10

...use of a typewriter, and if that inmate does not know how to use said typewriter, he/she will be provided an inmate who can type for them. nowhere in this policy does it state that the inmate will be provided a typewriter, but he/she must supply his/her own type letter wheels, ribbons, etc.. Nor does it state that said inmate must be indigent to be supplied these necessary typing materials. In fact, it says you will be provided an typewriter, and one shall come to the conclusion that the author of said policy had suggested that the typewriter in fact would be a fully operational typewriter, not a gutted typewriter where that inmate would have to jump through bureaucratic hoops at the direction of prejudiced staff member so he can continue with his legal filings.

Until the FBOP changes this policy to show that inmates must meet specific prongs before being issued a fully functional typewriter then I request that USP-Allenwood staff issue me upon request without any further interferance or delay these necessary typing materials so I may continue with my legal filings immediately. And cease and desist from any further manipulation of FBOP policy to suit their means for justifying their acts of prejudice towards inmates.

Respectfully submitted,

February 16, 2017

James H. Bendyna  40866-050
FCC; Allenwood-USP
P.O. Box 3000/Unit-2A
White Deer, Pennsylvania 17887

(G-6)

public directly to the Rules Administrator.

   e.   The Education Supervisor must also ensure that a copy of each Federal Register document is posted on at least one centrally located staff bulletin board.  Staff may send comments

on proposed or interim rules as members of the public directly to the Rules Administrator, and need not send such comments through the normal "chain of command."

10.    [**LEGAL RESEARCH AND PREPARATION OF LEGAL DOCUMENTS** §543.11

   **a.   The Warden shall make materials in the inmate law library available whenever practical, including evening and weekend hours.  The Warden shall allow an inmate a reasonable amount of time, ordinarily during the inmate's leisure time (that is, when the inmate is not participating in a scheduled program or work**

**assignment), to do legal research and to prepare legal documents. Where practical, the Warden shall allow preparation of documents in living quarters during an inmate's leisure time.**

   **b.   The Warden shall periodically ensure that materials in each inmate law library are kept intact and that lost or damaged materials are replaced.**

   **c.   Staff shall advise an inmate of rules and local procedures governing use of the inmate law library.   Unauthorized possession of library materials by an inmate constitutes a prohibited act, generally warranting disciplinary action (see part 541 of this chapter).]**

Part 541 refers to the Program Statement on Inmate Discipline and Special Housing Units.

[d. An inmate's legal materials include but are not limited to the inmate's pleadings and documents. (such as a pre-sentence report) that have been filed in court or with another judicial or administrative body, drafts of pleadings to be submitted by the inmate to a court or with other judicial or administrative body which contain the inmate's name and/or case caption prominently displayed on the first page, documents pertaining to an inmate's administrative case, photocopies of legal reference materials,

and legal reference materials which are not available in the institution main law library (or basic law library in a satellite

progstat               11

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



40866050

camp).]

   Staff must consult with Regional Counsel if there is any question whether certain items qualify as legal materials.

   [(1)    An inmate may solicit or purchase legal materials from outside the institution.   The inmate may receive the legal materials in accordance with the provisions on incoming publications or correspondence (see 28 CFR part 540, subparts B and F) or through an authorized attorney visit from a retained attorney.   The legal materials are subject to inspection and may be read or copied unless they are received through an authorized attorney visit from a retained attorney or are properly sent as special mail (for example, mail from a court or from an

attorney), in which case they may be inspected for contraband or for the purpose of verifying that the mail qualifies as special mail.]

   28 CFR part 540, subparts B and F refer to the Program Statements on Correspondence and Incoming Publications respectively.

   [(2)    Staff may allow an inmate to possess those legal materials which are necessary for the inmate's own legal actions. Staff may also allow an inmate to possess the legal materials of another inmate subject to the limitations of paragraph (f)(2) of this section.   The Warden may limit the amount of legal materials an inmate may accumulate for security or housekeeping reasons.]

   To ensure that legal materials do not become a security or housekeeping hazard (e.g., fire, sanitation), each institution may establish a limit on the amount of, and storage location for legal materials in the inmate's living area.

   The amount of storage space provided for legal materials depends upon the total storage space available.   Ordinarily, the amount may not be restricted below three cubic feet per inmate.

In a segregation or detention area, the amount ordinarily may not be restricted below one cubic foot per inmate.

   Alternate storage areas may be provided only for storing excess legal materials.   The Regional Counsel may be consulted if there is a question as to the need for bulky or excess legal

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(G-8)



40866050

material, or if there is any question regarding the applicability of the legal materials to the inmate's own legal actions.

**[e.    An inmate is responsible for submitting his documents to court.        Institution staff who are authorized to administer oaths shall be available to provide necessary witnessing of these documents, as requested by inmates and at times scheduled by staff.**

See Section 16 for further instructions on administering oaths and acknowledgments.

**f. (1)    Except as provided for in paragraph f.(4) of this section, an inmate may assist another inmate in the same institution during his or her leisure time (as defined in paragraph a. of this section) with legal research and the preparation of legal documents for submission to a court or other judicial body.]**

Any assistance offered by one inmate to another is voluntary.   An inmate is not entitled to assistance from any specific inmate.   Because no inmate may conduct a business, the assisting inmate may not receive compensation.    The assisting inmate shall not be provided any privileges ordinarily afforded

to attorneys or paralegals, clerks, and legal assistants, even if the inmate was an attorney before his or her incarceration.

Inmates who are in different institutions are prohibited from providing legal assistance to each other except to the extent that they may be allowed to correspond with each other about legal matters.   For example, immediate family members or co-defendants or co-plaintiffs may receive approval to exchange correspondence (see the Program Statement on Correspondence).

Inmates who are allowed to exchange correspondence may choose to include legal material pertinent to their joint action in their correspondence.    Enclosed legal material, however, is subject to inspection and can be read or copied.

Legal material which co-defendants or co-plaintiffs receive through special mail or from an attorney through an attorney

visit is subject to inspection for contraband or qualification as special mail only, and may not be read or copied.

**[(2)      Except as provided for in paragraph f.(4) of this** progstat                                13

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

G-9)

section, an inmate may possess another inmate's legal materials while assisting the other inmate in the institution's main law library and in another location if the Warden so designates.

(a)   The assisting inmate may not remove another inmate's legal materials, including copies of the legal materials, from the law library or other designated location.   An assisting

inmate is permitted to make handwritten notes and to remove those notes from the library or other designated location if the notes do not contain a case caption or document title or the name(s) of any inmate(s).   The assisting inmate may also develop and possess handwritten drafts of pleadings, so long as the draft pleadings

do not contain a case caption or document title or the name(s) of any inmate(s).   These notes and drafts are not considered to be the assisting inmate's legal property, and when the assisting inmate has these documents outside the law library or other designated location, they are subject to the property limitations in § 553.11(a) of this chapter.]

§553.11(a) refers to the Program Statement on Inmate

Personal Property.

[(b)   Although the inmate being assisted need not remain present in the law library or other designated location while the assistance is being rendered, that inmate is responsible for providing and retrieving his or her legal materials from the library or other designated location.   Ordinarily, the inmate

must provide and retrieve his or her legal materials during his or her leisure time.   An inmate with an imminent court deadline may request a brief absence from a scheduled program or work assignment in order to provide or retrieve legal materials from an assisting inmate.]

The law library is the most appropriate location for allowing inmates to assist one another with legal matters

however, the Warden may choose to designate additional locations.

Where it is difficult to use the institution's main law library (for example, at a medical facility, a metropolitan detention center, a metropolitan correctional center, an

progstat                                    14

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(G-10)

40866050

administration maximum security facility, an administrative high security level institution, or in a special housing unit,

pretrial unit, or holdover unit), the Warden should designate another location. The need for institution security, good order, or discipline, however, may prevent the use of another location.

The inmate being assisted must bring his or her legal materials to the law library or other designated location to provide them to the assisting inmate. The assisting inmate may not remove the legal materials from the law library or other designated location.

Legal materials left unattended in the law library or other designated location may be disposed of as nuisance contraband or returned by staff to the owner. Staff are to consult with institution legal staff or Regional Counsel if they have a question about who owns the legal materials.

[(3) **The Warden may give special consideration to the legal needs of inmates in mental health seclusion status in federal medical centers or to inmates in controlled housing.**

(4) **The Warden at any institution may impose limitations on an inmate's assistance to another inmate in the interest of institution security, good order, or discipline.]**

For reasons of security, inmates in an administrative institution or unit or in a special housing unit have limited access to other inmates on those units and no access to general population inmates. Legal assistance under Section 10 of this Program Statement remains available for such inmates.

[g. The institution staff shall, upon an inmate's request and at times scheduled by staff, duplicate legal documents if the inmate demonstrates that more than one copy must be submitted to court and that the duplication cannot be accomplished by use of carbon paper. The inmate shall bear the cost, and the duplication shall be done so as not to interfere with regular institution operations. Staff may waive the cost if the inmate is without funds or if the material to be duplicated is minimal, and the inmate's requests for duplication are not large or excessive.]

To prevent abuses of this provision (e.g., inmate shows a

progstat                              15
© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(G-11)

40866050

**EXHIBITS H 1 THRU 11**



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

April 28, 2017

Mr. James H. Bendyna, Jr.
Register No. 40866-050
USP Allenwood                           Re:     DOJ-2017-003693 (OIP)
P.O. Box 3000                                   DOJ-2017-003694 (OIP)
White Deer, PA  17887                           VRB:DRH:MWM

Dear Mr. Bendyna:

        This responds to your Freedom of Information Act requests received in this Office on
April 24, 2017, seeking records concerning the Federal Bureau of Prisons.  This response is
made on behalf of the Office of Information Policy.

        Your requests have been received by the Office of Information Policy of the United
States Department of Justice, which processes Freedom of Information Act (FOIA) and
Privacy Act (PA) requests for records it maintains as well as records maintained by the Offices
of the Attorney General, Deputy Attorney General, Associate Attorney General, Public Affairs,
Legislative Affairs, and Legal Policy.  OIP also adjudicates administrative appeals of denials
of FOIA/PA requests made to the Department.  This Office maintains the case files for the
initial requests and administrative appeals it processes.

        Please be advised that the FOIA provides a right of access to federal agency records
that exist and can be located in federal agency files.  The FOIA does not require agencies to
conduct research for you, to analyze data, to answer questions, or to create new records in
response to a FOIA request.  Moreover, the FOIA does not apply to records that are maintained
by states, counties, or cities, or by the legislative or judicial branches of the government.

        For your information, the FOIA operation for both the Department of Justice and the
federal government is decentralized and each Department component and federal entity
maintains and handles FOIA requests for its own records.  Accordingly, you need to direct
your letter to the office(s) you believe have records pertaining to the subject of your request.
Additional information regarding the federal government's administration of the FOIA,
including a listing of FOIA contact information, is available at www.foia.gov.  Based on the
information you have provided, you may want to direct your requests to the Federal Bureau of
Prisons as the Department component most likely to maintain the records you are seeking.

        You may contact our FOIA Public Liaison at the telephone number listed above for any
further assistance and to discuss any aspect of your request.  Additionally, you may contact the
Office of Government Information Services (OGIS) at the National Archives and Records
Administration to inquire about the FOIA mediation services they offer.  The contact

(H-1)

-2-

information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.

       If you are not satisfied with my response to these requests, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal at https://foiaonline.regulations.gov/foia/action/public/home.  Your appeal must be postmarked or electronically transmitted within ninety days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

(H-2)

First F.O.I.A. Request

James H. Bendyna Jr.                                    March 6, 2017
Reg.#: 40866-050
FCC; USP-Allenwood
P.O. Box 3000/Unit-2A
White Deer, PA 17887

Re: Request for information pursuant to The Freedom of Information Act 5 U.S.C.S. § 552,
    for public record information.

To whom it may concern:

    I respectfully request to receive a full copy of all USP-Allenwood Annual
Chaplainacy Budgets for the years of 2014, 2015, 2016 and 2017.  I request that all
monies alloted for each religious group for religious material requests made by inmates
for their respective religious group and the monies alloted per group for the reported
year for each year I'm requesting.  Also, what monies in the budget each year that was
set aside to be used for Ceremonial meal purchases for each group.  What does the budget
that is appropriated for USP-Allenwood supposed to cover as for basic annual purchases
that are considered to be standard purchases and not special request purchases (e.g. all
grape juice, matzahs, incense, candles, firewood, herbs and spices, etc. that are used
typically each week by each group that is not outside what each FBOP institutions keeps
on hand for each respective group).  And if there is no annual budget allotted each year
due to federal financial constraints then where does the funding comes from to allow each
FBOP Institution the capability to purchase the basic needs to keep each religious group
active week to week if there is an alleged no budget disbursed for use.

    I respectfully request a copy of all Ceremonial meals requested by all religious
groups throughout all USPs in the FBOP for the years of 2014, 2015, 2016 and 2017, and
the copy I request is an actual copy of the menu each religious group had filled out and
turned in for approval that was approved for use (e.g. Bear meat for Indians, special
foods made with National menu recipe items not normally made for general population use,
Bean pies, cheesecakes, stuffed vegatables, fruit patries, etc.). Specifically, all menus
approved for the Jewish community for all USPs.

    Finally, I request a copy of the National Passover menu for 2017 and the FBOP
guidelines sent out to all Chaplains and Food Service Supervisors.  Also, a copy of all
Passover SPO order forms for each FBOP institution Religious Services for 2014, 2015,
2016 and 2017 that each Chaplain for their respective institution had disbursed to their
respective Jewish community members for SPO purchasing.

Respectfully,

(H-3)

Second F.O.I.A. Request

James H. Bendyna Jr.                                March 6, 2017
Reg.#: 40866-050
FCC; USP-Allenwood
P.O. Box 3000/Unit-2A
White Deer, PA 17887

Re: Freedom of Information Act pursuant to 5 U.S.C.S. § 552, request for copies of FBOP
    records.

To whom it may concern:

  I respectfully request to receive a copy of all Federal Bureau of Prisons' USPs
inmate request for Second Chance Act consideration.  Specifically, all requests that an
inmate had asked for additional half-way house time (e.g. a request under the Act to be
considered for up to a year in the half-way house) that was approved allowing the inmate
to have more than the 6-months  normally requested by Unit Case Managers.  I want only
those in United States Penitentiaries  who applied for the Second Chance Act and were
approved.  I want a listing by Institution and the inmate's first name and first initial
to his/her last name only with the amount of time approved (e.g. USP-Coleman #1; John D.
7-months approved half-way house) from January 1, 2015 through to the writing and date
of this request.

  Thank you for your full cooperation and prompt attention to my request.  I look
forward to your reply in the near future.


Respectfully,


(H-4)

TRULINCS  40866050 - BENDYNA, JAMES H JR - Unit: ALP-C-B

--------------------------------------------------------------------------------------------------

FROM: USP Associate Wardens
TO: 40866050
SUBJECT: RE:***Inmate to Staff Message***
DATE: 04/28/2017 02:22:02 PM

The names listed below include the first initial, which should suffice for the purpose you mention.  If you wish to receive
additional information, you may make a formal request pursuant to the Freedom of Information Act.

L. Oddo
D. White
C. Smith
B. Cieslukowski
C. Bergey
D. Fogelman

>>> ~^!"BENDYNA, ~^!JAMES H JR" <40866050@inmatemessage.com> 4/27/2017 7:34 AM >>>
To: AW White
Inmate Work Assignment: F/S/ Kit am

I request to receive the complete legal names (e.g. James Harry Bendyna Jr.) of the following staff members so I can proceed
with my civil court filings.

1) Warden Mr. Oddo,
2) AW Mr. White
3) AW Mr. Smith
4) Supervisory Chaplain Mr. Cieslukowski
5)Trust Fund Supervisor (both) Mrs. Burghee and her superior.

The courts have set a deadline for me to file my complaint and I'm asking for this information in accordance with FBOP policy
and the Rules of Civil Procedure.  I must receive this information no later than 4/29/17, thank you for your full cooperation and
prompt response to this request.

Respectfully,

James Bendyna

(H-5)

TRULINCS  40866050 - BENDYNA, JAMES H JR - Unit: ALP-C-B

-------------------------------------------------------------------------------------------------------

FROM: 40866050
TO: USP Religious Services
SUBJECT: ***Request to Staff*** BENDYNA, JAMES, Reg# 40866050, ALP-B-A
DATE: 03/07/2017 09:43:26 AM

To: Chaplain Cieslukowski
Inmate Work Assignment: Yard p.m.

This is a follow-up to my request to be on the list for the Fast of Esther this upcoming Thursday.  It has been in the past some type of lack of communication between your office and Food Service as to what is to happen on our Fast days (i.e. they were never notified and at last minute through together or Fast trays).  Also, I had requested if you would order enough Hamantaschens for each Jewish community member (2-per person), these are given free by Aleph (or for a minimal charge to Federal prisons that don't as this institution does not, accept donations) so we can observe Mishloach Manot and follow the customs and complete the Mitzvah for Purim.
Since these Hamantaschens are and have been supplied at other USPs and are currently, there shouldn't be and penological interest that would be violated, and it would be considered discriminatory for one inmate (no matter where that inmate resides) to receive them and not another. Also, I made this request in writing and turned it into Chaplain Moore over a month ago so there really should be no excuse of why this request couldn't be fulfilled as well.

Respectfully,

James H. Bendyna

(H-6)

**3.4 PRICING**. The selling price of each item sold in the Commissary is calculated automatically in TRUFACS based on the actual cost and mark-up of the item. Use the following procedures to determine selling prices.

a. **Cost Price**. The cost of an item is established in TRUFACS when the initial Receiving Report is generated. The cost is based on a **sellable unit**, defined as the smallest individual unit sold in the Commissary. In the rare case when the purchase of a non-SPO regular item includes a shipping charge, the shipping charge shall not be included when determining the cost price of the item.

b. **Mark-up and Selling Price Computation**. The mark-up for the selling price of each item ordered and sold in the Commissary is automatically calculated based on the cost and mark-up selected in TRUFACS. The mark-up is based on the following:

0%          See paragraph d. below.

30%         Standard items/SPOs purchased.

Pre-Printed    Sales price printed on packaging (see below).

Non-Physical    Selling price of items not physically maintained in inventory (e.g., photo vouchers).

Generally, the Federal Government does not pay taxes (State, local, or Federal) on purchases. However, when payment of taxes is required, these steps are followed:

> Divide the total tax charge(s) by the number of sellable units taxed.
> Add the tax per sellable unit to the cost price of the lowest sellable unit.
> Use this amount as the cost price for receiving purposes.

Occasionally, the selling price, rounded to the next highest nickel, may exceed the manufacturer's printed price. Then the selling price must be set at the manufacturer's pre-printed price, even though it may be in odd cents. In instances when the calculated selling price is less than the manufacturer's printed selling price, the calculated selling price is used. Pre-printed applies only

to pre-printed, packaged, "across the counter" sales items (potato chips, pretzels, etc.). It does not apply to catalog prices such as those for SPO items (e.g., leather companies' catalogs).

c. **Coupons/Tokens**. Coupons or tokens sold through the Commissary and used to purchase items or services are, without exception, marked up in the same way as stocked items.

d. **Selling Price With No Mark-up**. The following items have no mark-up added to the cost and are not rounded to the next $0.05:

progstat                                    1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(H-7)
40866050

Postage.

Self-improvement textbooks.

Correspondence courses.

Tools and materials for educational/vocational training.

Law books or other legal materials.

Religious articles (excludes edible items).

Smoking Cessation Program materials.

Passover meals during Passover.

e. **Selling Price Change Trust Fund Merchandise**. Old and new stock may not be maintained at different selling prices. Once new merchandise is received at a price other than the current selling price (either higher or lower), the selling price changes for all identical items in stock.

**Example:** 17 units selling for $0.35 each are in the Commissary; 120 units of the identical item are received. The new shipment of 120 units cost $0.20 each. The computed selling price is $0.26 each and requires rounding to $0.30 each. In addition, the selling price of the 17 units on hand decreases to $0.30.

f. **Trust Fund Price Lists**. Institutions distribute lists of Commissary items and their selling prices to help inmates prepare shopping lists in advance.

g. **Refunds/Exchanges**. Sales are final after the inmate accepts/inspects the item(s), receives the sales receipt, and leaves the Commissary, except for MP3 players.

h. **Warranties**. Inmates may have damaged warrantied items repaired/replaced by the vendor; however, items repaired/replaced (excluding Commissary-purchased MP3 players) shall be forwarded to an outside address at the inmates' expense. Inmates may elect to have warranty claims for Commissary-purchased MP3 players shipped to their designated Federal institution. If mailed to the institution, the package is addressed to the attention of the Trust Fund Supervisor and returned to the inmate.

i. **Manufacture/Retail Coupons**. Coupons are not honored at the Commissary.

j. **Rebates**. Institutions are not encouraged to solicit cash rebates for merchandise purchases, but to seek the best price available at the time of purchase. If a cash rebate is received, funds are deposited in the Trust Fund appropriation (15X8408) using sub-object code 2670.

k. **Samples**. Non-food product samples received from a vendor are returned to the vendor or

progstat                                   2

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(H-8)

40866050

destroyed after evaluation.  Food samples considered for sale in the Commissary are only sampled by staff designated by the Trust Fund Supervisor.  A sample is any item not currently sold in the Commissary.

l.  **Promotion/Quantity Discounts**.  Items identical to those ordered received with an order as part of a promotion or quantity discount are received via a Receiving Report and the cost per item computed using the total quantity received.

If promotional or discounted items are received after the original order Receiving Report has been processed, a donated Receiving Report is prepared using the latest cost price and selling price for that item.  A non-TRUFACS donated receiver is entered into TRUFACS as an inventory adjustment.

**3.5  SPECIAL PURPOSE ORDERS (SPO)**.  It is not practical to stock all approved items of a special nature, such as books, hobbycrafts, etc.  An SPO is an inmate request to purchase an approved item or items not routinely sold in the Commissary.  Periodic reviews are made to determine whether any SPO item should be included as a routine stock item.  SPOs are not approved solely for ordering a different color, brand, or quality of an item currently sold.  Requests to purchase these items are approved on an individual basis.

Ordinarily, no more than one order is processed per month for any inmate.  The maximum dollar amount allowed for SPO items is $300 (cost price excluding shipping charges) per quarter.  Exceptions may be made for projects which require items to be purchased from more than one vendor.

The Warden approves, in writing, individual leather items with a unit cost of $100 or more for sale to inmates.  The Warden also approves leather items whose size could pose a security risk.  This authority cannot be re-delegated.

a.  **Inmate Procedures**.  Inmates desiring special purpose items submit a signed Special Purpose Order Request – Inmate (BP-200) to designated staff.

**Note:**  The SPO Request form is used in place of the Request for Purchase (BP-A0101), and the documentation for Inmate Personal Property Record (BP-383).  TRUFACS generates a Purchase Card Purchase Order or a Purchase Order and Receiving Report.

b.  **Approval Process**.  The approving official verifies that the SPO Request form is complete, includes current prices and catalog numbers, and, if the inmate is on FRP Refuse status, that purchase limitations outlined in the Program Statement **Inmate Financial Responsibility Program** are not exceeded.

**Note:**  Inmates in FRP Refuse status may not be denied the ability to purchase Kosher/Halal

progstat                                              3
© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(H-9)

40866050

shelf-stable entrees through the SPO Program.

The approving official ensures that limitations such as frequency of orders, single order maximum dollar amount, or quarterly dollar amount are not exceeded.

Approval is indicated on all copies of the SPO Request. After the approving official signs it, it is delivered to the Trust Fund Supervisor in a secure manner.

c. **Numbering**. TRUFACS assigns the SPO number as a special item number that is sequential following the two-digit fiscal year (FY 05; 05-0040, 05-0041). The item description contains the SPO number and the amount is encumbered automatically when the TRUFACS SPO is created. The TRUFACS-generated SPO number is recorded on the original SPO Request.

Ordinarily, SPOs are ordered and entered on a weekly basis following receipt by Trust Fund staff.

d. **Markup**. The calculation for the selling price is based on cost, markup, and transportation charges.

e. **Encumbrances/Fund Control**. The inmate's account is encumbered automatically for each SPO ordered in TRUFACS. The Trust Fund Supervisor ensures the SPO Request form is returned to the Approving Official if an SPO was rejected based on insufficient funds, exceeding the monthly quantity limit of SPOs or quarterly dollar limitations, spending limit restriction, or FRP Refuse status.

If required by the Trust Fund Supervisor, the Fund Control system may be used for SPOs.

f. **Procurement Procedures**. The SPO Request form, and any other ordering documents, is sent to Trust Fund staff. Once the SPO is created in TRUFACS, Trust Fund staff attach the TRUFACS-generated SPO to the original SPO Request Form and forward the non-purchase card order to Acquisitions staff to verify and order.

The Government purchase card order is forwarded to the Trust Fund Supervisor for approval, then back to the card holder to order. When possible, SPOs are purchased by Government purchase card by Trust Fund staff.

A copy of the SPO, and any other ordering documents, is sent to the Warehouse.

g. **Receiving**. Upon receipt of the SPO at the institution, a TRUFACS-generated Receiving Report is prepared per normal receiving procedures for Trust Fund resale merchandise.

h. **Selling**. A particular SPO encumbrance is released automatically; funds are deducted from the inmate's account at the time the merchandise is sold to the inmate through regular sales procedures. The inmate signs a sales ticket (unless fingerprint sale). The appropriate number of copies of the SPO Request form are signed at the time the inmate receives the article(s), verifying

progstat                                                      4

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(H-10)

40866050

**(2)  Special Purpose Orders (SPO)**

    **List of Approved Items.**  Items may be listed specifically, such as Religious Medallion, or by general categories – vocational/educational books, leathercraft, etc.  The SPO process is not used by inmates to purchase personal-use musical instruments, athletic items such as racquets, or any other item not authorized per the Program Statement **Inmate Personal Property**.

    **Approving Official(s).**  A position may be designated to approve all SPOs, or approving authority may be delegated to the position responsible for a specific activity; for example, the Unit Manager for items of high dollar value and items that may cause storage problems due to limited space; the Supervisor of Education for correspondence courses, materials for vocational training, law books, etc.; the Supervisor of Recreation for hobbycraft and athletic articles; and the Chaplain for religious articles.  Trust Fund staff coordinate with the Chaplain to identify religious articles that may be purchased through the SPO program.  Information on approved items is in the Program Statement **Religious Beliefs and Practices.**

    **Monetary Guidelines.**  These set monetary limits for approving authority, and limits on the value of individual items, the value of an entire order, the quantity of items on an individual order, and the frequency of orders that may be submitted each month or quarter.

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A-11)

40866050



⇔40866-050⇔
James H Bendyna
Register #: 40866-050
Federal C.C. Usp-Allenwood
P.O. Box 3000/Unit 3-B
White DEER, PA 17887
United States

U.S. POSTAGE
WHITE DEER, PA
MAY
AMOUNT
$0.00
R2300X139072-02

MAY

RECEIVED
SCRANTON

MAY 1 5 2017

PER _____ DEPUTY CLERK

MAILED FROM
PENITENTIARY



PRIORITY
★ MAIL ★

TRACKED
★ ★ ★
INSURED
★

UNITED STATES
POSTAL SERVICE®

For Domestic Use Only

Label 107R, July 2013

⇔40866-050⇔
United States Courthouse
Clerk of the Courts
235 N Washington AVE
P. O. Box 1148
Scranton, PA 18501
United States

Expected Delivery Day: 05/15/2017

USPS TRACKING NUMBER



9505 5135 2176 7132 0494 63

*LEGAL MAIL!*